CITY OF FORT WORTH ET AL. V. CORRIE M. WILLIAMS.

Decided April 15, 1909.

**1.—Negligence—Charge—Telephone Guy Wire.**

The submission of the issue of negligence in "constructing and maintaining" a guy wire, extending from a telephone pole to the side-walk in which it was anchored, so obscured from vision that one using the street with due care and in ignorance of its location, fell over it and was injured, was not error, though no evidence of fault in its construction appeared except the failure to add a box enclosing it or other device to make its presence obvious.

**2.—Same.**

Leaving constructive work incomplete or short of that which an existing duty requires should be done, may be regarded as a fault in construction, notwithstanding that which is done is well done.

**3.—Electric Wires—Negligence—Proper Construction—Evidence.**

On the issue of negligence in bracing a telephone pole with a guy wire extending into and anchored below the sidewalk, so as to present a dangerous obstruction not obvious to a pedestrian, no error appeared in excluding evidence offered by defendant that anchoring the guy wire to a post above the walk would be dangerous if the guy wire was not fastened above the reach of passers by or furnished a ground connection and became charged with electricity.

**4.—Briefs—Propositions.**

Assignments of error which do not constitute distinct propositions and are not followed by propositions in the brief do not require consideration.

**5.—Electric Wires—Negligence—Necessary Danger.**

Persons occupying the highway with electric wires and their supports are required to use care to avoid danger and injury to others; their liability is not limited to care against "unnecessary" dangers. See charges on this subject properly given and refused.

**6.—Personal Injury—Pleading.**

Allegations by plaintiff that "the bones of her ankle were fractured, the muscles and ligaments torn and strained, and her left ankle badly bruised," were sufficient to admit proof that she had suffered a fracture of the lower fourth of the fibula, the smaller bone of the leg, with outward dislocation of the foot at the ankle joint, known in surgery as a "Pott's fracture," no bones of the ankle being broken.

**7.—Argument of Counsel.**

Objectionable remarks by counsel in argument held not ground for reversal where they were withdrawn on objection and the jury instructed by the court to disregard them.

**8.—Damages—Personal Injury.**

Evidence considered and held to sustain a recovery of $7,500 damages for personal injuries—fracture of the leg bone and dislocation of the ankle.

ON MOTION FOR REHEARING.

**9.—Joint Wrongdoers—Damages—Apportionment—Verdict—Judgment.**

A city and a telephone company being jointly sued on account of injuries to a pedestrian by falling over the guy wire anchored in the sidewalk to brace a pole supporting electric wires, the jury returned a verdict for $1,500 against the city and $6,000 against the Telephone Company. Held, that a judgment thereon for $7,500 against the latter company was unwarranted.

**10.—Same—Case Distinguished.**

San Antonio & A. P. Ry. Co. v. Bowles, 88 Texas, 634, distinguished.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*A. P. Wozencraft, Wm. D. Willams, D. A. Frank* and *R. M. Rowland,* for appellant, Southwestern T. & T. Co.—The court erred in rendering judgment against this defendant for an amount in excess of the amount awarded against this defendant by the verdict of the jury. San Antonio & A. P. Ry. Co. v. Bowles, 32 S. W., 880, 30 S. W., 727, 30 S. W., 89; Ablowich v. Bank, 95 Texas, 429; Letot v. Peacock, 94 S. W., 1121.

The court erred in submitting to the jury the question as to whether this defendant was negligent in constructing and maintaining its guy wire anchored in the sidewalk, as there was no evidence showing or tending to show that this was an improper or negligent method of construction. Foy v. Winston, 47 S. E., 466; Canavan v. Oil City, 38 Atl., 1096; Mahoney v. Helena, 96 Fed., 790; Downey v. Boston, 67 N. E., 638; Young v. Yarmouth, 9 Gray (Mass.) 386; Horner v. Philadelphia, 45 Atl., 330; Weinstein v. Terre Haute, 46 N. E., 1004; Town of Spencer v. Andrew, 12 L. R. A., 115, and note; Gaudin v,

Carthage, 12 N. Y. Supp., 796; O'Bryan v. Amsterdam, 26 N. Y. Supp., 1123; DuBois v. Kingston, 55 Am. Rep., 804; Harrigan v. Brooklyn, 22 N. Y. Supp., 39; Gottsberger v. New York, 29 N. Y. Supp., 592.

If appellant, in setting up and maintaining its pole and guy wire, used ordinary care to avoid unnecessary injury and danger to the public traveling along the sidewalk at such place, it was not liable to plaintiff, and the jury should have been so instructed. Same authorities. Also: Gulf, C. & S. F. Ry. Co. v. Johnson, 98 Texas, 76; Neville v. Mitchell, 28 Texas Civ. App., 89; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635.

The injury to plaintiff's leg known as Pott's fracture was an injury not pleaded and hence the jury should have been instructed not to consider it. Texas State Fair v. Marti, 30 Texas Civ. App., 132; International & G. N. Ry. Co. v. Thompson, 34 Texas Civ. App., 67; Southern Pac. Co. v. Martin, 83 S. W., 635.

*Capps, Cantey, Hanger & Short,* for appellee.—Where the jury finds the amount of plaintiff's damages and that both of two defendants negligently caused the injury, an attempt to apportion the damage between the two defendants is unauthorized, and should be disregarded by the court. San Antonio & A. P. Ry. Co. v. Bowles, 88 Texas, 640; Missouri, K. & T. Ry. Co. v. Vance, 41 S W., 171; San Marcos Electric Light & Power Co v. Compton, 107 S. W., 1151.

HODGES, ASSOCIATE JUDGE.—On the night of June 11, 1907, the appellee and her sister were traveling along on the north side of Jackson Street in the City of Fort Worth. When they reached a point near where that street was crossed by Monroe Street they observed some obstructions on and near the sidewalk, and in order to avoid them started to cross over to the opposite side of Jackson Street for the purpose of pursuing their journey on westward. Just as the appellee was stepping from the sidewalk to the paved street her foot was caught in the guy-wire of the appellant telephone company anchored in the edge of the sidewalk next to the street. This caused her to fall and sustain the injuries for which she sued. She recovered a judgment against the appellant telephone company and the city of Fort Worth jointly for the sum of $7,500. The jury returned the following verdict: "We, the jury, find in favor of the plaintiffs against the defendant City of Fort Worth in the sum of fifteen hundred dollars. We further find in favor of the plaintiffs against the defendant Southwestern Telegraph & Telephone Company in the sum of six thousand dollars. We further find against the city's plea over against the Southwestern Telegraph & Telephone Company, and in favor of defendant Texas Construction Company composed of H. P. Reiter and F. V. Crandall." Upon that verdict the court rendered a judgment against the telephone company and the City of Fort Worth jointly for the sum of $7,500. The appellant telephone company alone has filed briefs in this court, and it alone will be referred to in this opinion when the term "appellant" is used.

The first and second assignments of error relate to the action of the

court in entering judgment against the appellant for the full sum found against both, and in excess of the amount awarded against it alone by the jury. If the appellant and the city were both liable in this case for any damages, it was by reason of being jointly and severally responsible for the negligence causing the injuries sustained by the appellee. Each of them was responsible for all of the consequences resulting from the accident, or none; and the jury had no authority to undertake to apportion the damages which the appellee was entitled to recover. There were two issues here involved upon which the jury was required to pass: (1) Was the appellant, or the parties defendant, guilty of negligence proximately causing the injuries? (2) If so, what were appellee's damages? If the verdict sufficiently answered these two questions, then it became the duty of the court to render a judgment pronouncing the legal consequences of such finding. A finding in favor of appellee against the appellant for any sum was a finding in her favor on the issue of negligence, and the aggregate sum awarded against both defendants in the case was an assessment of the amount of her damages. The effort of the jury to divide the amount and fix that which each of the wrong-doers should pay should be treated as surplusage. Appellant refers to the case of San Antonio & A. P. Ry. Co. v. Bowles, 30 S. W., 89, 88 Texas, 643. In that case judgment was sought against two defendants for a joint wrong. The jury rendered a verdict against both for ten thousand dollars, and then undertook to separate the liability of each and award a recovery against each severally for five thousand dollars. The trial court disregarded the apportionment made by the jury, and rendered a judgment against the defendants jointly for the sum of ten thousand dollars. On appeal the Court of Civil Appeals reformed this judgment and entered one according to the language of the verdict—five thousand dollars against each of the defendants. In reviewing this decision the Supreme Court held that the trial court correctly entered a judgment against the defendants jointly for the full amount of the damages found. Attention is also called by the appellant to the case of Ablowich v. Greenville Nat. Bank, 95 Texas,, 429, 67 S. W., 79. In that case the questions submitted to the jury involved the finding of whether or not there was a lien upon certain property. The jury having found in favor of the plaintiff's demand but failing to find whether or not there was a lien, the court entered up a judgment foreclosing the lien, upon the ground that the testimony being uncontradicted the existence of the lien could be assumed as a judicial consequence of the finding in favor of the debt. This judgment was reversed by the Supreme Court, and it was held that the judgment must, in all cases where the issues are submitted to the jury, be based upon the facts found by the jury, and no other. The jury having failed to find whether or not there was a lien, the court could not refer to the evidence for the purpose of supplying something which the jury had not found. We think those cases are not in conflict with the conclusions which we have reached in this. In fact, the Bowles case may be regarded to some extent as authority for our conclusion. The court properly rendered judgment against the defendants jointly for the full amount of the damages which the jury found appellee was

entitled to recover.   San Marcos Elec. L. & P. Co. v. Compton, 48 Texas Civ. App., 586.

It is claimed that the court erred in the following portion of his charge: "If you find from the evidence that on the occasion in controversy there were obstructions on the sidewalk near the place of the accident in question, and that by reason thereof, plaintiff, Mrs. Allen, attempted to step from the sidewalk to the street, and that in doing so her foot was caught on the guy wire, without any previous knowledge on her part of its presence, and that thereby she was caused to fall and sustain injuries; and if you further believe from the evidence that on the occasion of said accident said guy wire was not reasonably visible to a pedestrian, in the exercise of ordinary care for his personal safety, and if you further find from all the facts and circumstances in evidence, that the defendant, Southwestern Telegraph & Telephone Company, was guilty of negligence in constructing and maintaining said guy wire, anchored in the sidewalk, and so obscured from vision, if so obscured;" etc.   The specific error charged consists in submitting the issue as to whether appellant was negligent in constructing and maintaining its guy wire anchored, as it was in the sidewalk, because of an absence of any evidence tending to show that this was a negligent or improper method of construction, and because the issue should have been restricted to the question of whether or not the wire should have been guarded, or protected, or made more open to observation.   The telephone pole to which this wire was attached stood on the north line of Jackson Street near its intersection with the east line of Monroe Street.   The wire was attached to the telephone pole near the top, thirty-two feet and six inches above the level of the sidewalk, and ran downward and eastward at an angle, reaching the ground twenty-eight feet from the bottom of the pole, and entered the cement sidewalk six inches from the curb.   This anchor was intended to hold the pole in a perpendicular position and to resist the strain produced by the telephone or message wires.   It consisted of a wire five-sixteenths of an inch in diameter, and of an anchor-stop one inch in diameter.   The width of the sidewalk on the north side of Jackson street was about eight or ten feet.   The anchor to which the guy-wire was fastened extended into the earth about six feet, where it was attached to a creosoted block of wood called a "dead man." It appears that Monroe Street was at the time being repaired, and the contractors had piled some obstructions across the sidewalk of Jackson Street near its intersection with Monroe, and by reason of those obstructions the ground where this guy-wire was anchored was somewhat obscured.   The telephone pole was a part of the telephone system, and was needed and used by appellant for the purpose of carrying its telephone wires.   The city was also making use of this pole for carrying some of its wires.   The testimony showed that this method of anchoring guy-wires supporting telephone poles in this manner was the one commonly adopted in the City of Fort Worth.   One of the witnesses, who appeared as an expert in the case, testified that an anchor-post, or short pole sunk in the ground, and the guy-wire attached to it, was sometimes used instead of the wire itself being anchored in the sidewalk.   He could not call to mind

any place in the City of Fort Worth where an anchor-post was used except one near City Hall. The use of an anchor-post is not now as usual or common a construction as heretofore. He further stated that an anchor-post could be more easily seen at night than a guy-wire, and there would be less danger of a pedestrian's running into it, but that it would not stand the strain if set in a perpendicular position and would have to be set at an angle of about forty-five degrees; that such a post will deteriorate faster than iron, and not last so long. He also stated that guy-wires are sometimes boxed up with boards so as to make them more conspicuous. Another witness testified that the proper method of anchoring guy-wires to the ground or pavement "was a little bit broad." There are various means and ways used and considered proper; that this was one of the ways that is used and considered proper; it was used largely by almost every company of which he had any knowledge, and was a common method of construction adopted in Fort Worth by telephone and telegraph companies. He further stated that it was a fact that guy-wires constructed like this are frequently encased in boxes. The purpose of the boxes is to make them more conspicuous to keep people from walking into them. There was no box around this wire. We do not think the charge is subject to the criticism urged. The language so connected the acts of constructing, maintaining and leaving the wire "so obscured from vision" as to present them to the jury conjunctively as one transaction, and the one which must be found to be negligently done to authorize a recovery. But leaving constructive work incomplete or short of that which an existing duty requires should be done, may be regarded as a fault in construction, notwithstanding that which is done is well done. If the jury concluded that the wire should have been encased in a wooden box to make it visible on dark nights, they might call this omission incomplete construction. There was no error in the charge as given.

The fifth assignment complains of the action of the court in sustaining the objections of the appellee to certain testimony sought to be obtained from the witness Crabtree. Crabtree had testified that for the past four or five years he had been city electrician for the City of Fort Worth and had been with the city in some capacity for eighteen years or over. On cross-examination the witness was shown a photograph which, from his remarks, we assume was that of a guy-wire anchored to a post, and had testified that the guy-wire shown thereon was fastened around the top of the post. He was then asked: "Now, as it stands there if that guy-wire became charged with electricity and any one put a hand on it standing upon the ground, what would be the effect?" This was objected to by the City of Fort Worth as immaterial, and the objection was sustained. We gather from the bill of exception that the purpose of the question was to show by this witness that a wire anchored in that manner would be dangerous should the wires of the telephone company from any cause become charged with a heavy current of electricity. We fail to see how this could be material in this case. Should a dangerous situation be created by anchoring the wire to

a post, there is no reason why the post might not be extended above ordinary reach, or that a metallic ground-connection might not be made. The bill does not show that this testimony was in rebuttal of anything offered by the opposing parties. The appellant's fifth, sixth, seventh, eighth and ninth assignments are overruled. Several of them are not propositions within themselves and are not followed by any propositions as required by the rules.

The tenth assignment complains of the refusal of the court to give the following special charge: "If you believe from the evidence that the defendant Southwestern Telegraph & Telephone Company in setting up and maintaining its pole and guy-wire at the place where plaintiff claims to have been injured, used ordinary care to avoid unnecessary injury and danger to the public traveling along the sidewalk at such place, then you will return a verdict in favor of the said defendant telephone company." It will be observed that this charge is based upon the proposition that it is only *unnecessary* injury and danger which it becomes the duty of the telephone company to avoid in the construction and maintenance of its wire. This charge does not properly measure the rights which a corporation such as the appellant in this case, may acquire in using a public highway. To say that they have a right to create dangers and inflict injuries regardless of the prudence that may be used by others, if it becomes necessary, is unwarranted. In the following charge the court correctly defined appellant's rights: "Under the law, the defendant Southwestern Telegraph & Telephone Company had the right to construct and maintain such guy-wires as were reasonably necessary to support its telephone poles, provided that in doing so, it exercised ordinary care for the safety of pedestrians in said city; and if from all the facts and circumstances in evidence, you find that said company was not guilty of negligence in constructing and maintaining the particular guy-wire in controversy, anchored as you believe the same was anchored, with such facilities as you find pedestrians had, if any, of knowing its location, then you will return a verdict in favor of the said Southwestern Telegraph & Telephone Company." Brush Electric Light Co. v. Lefevre, 93 Texas, 604, 55 S. W., 396. Smith v. Clay, 57 S. W., 74.

The testimony of one of the physicians was that the principal injuries sustained by the appellee consisted of what is called a "Pott's fracture"—that is a fracture of the lower fourth of the fibula, the smaller bone of the limb, with an outward dislocation of the foot. By a special charge, and also by objection to the introduction of certain testimony, appellant sought to exclude from the consideration of the jury this injury in estimating the appellee's damages, upon the ground that this fracture had not been alleged in the petition. The allegations of the appellee in her petition as to those injuries are as follows: "And by reason of the fall the bones of her ankle were fractured, the muscles and ligaments torn and strained, and her left ankle was badly bruised," etc. Dr. Creagin, whose testimony was that objected to, testified as follows: "I remember being called on the 11th of June last to attend Mrs. Williams. I got there sometime in the evening. I found she had a Pott's fracture of the

left leg, or left ankle. When I got there that night her ankle was swollen, puffed up, sore and tender." On cross-examination he said: "It was a Pott's fracture—named after the man—that is, a fracture of the lower fourth of the fibula, the smaller bone of the limb, with an outward dislocation of the foot. It is not a fracture of the ankle bone; it is a fracture of the bone of the leg above the ankle; it is a dislocation of the ankle, too—dislocation of the ankle accompanying it, but the ankle bones were not broken." On re-direct examination he stated: "In Pott's fracture there has to be ruptured ligaments so the bone can break or give way, and an outward dislocation of the foot. The ankle has always got to leave its position, and the foot goes outward and the bones inward; consequently there has got to be a rupture of one of the large ligaments that hold the ankle joint; the ligaments that hold the ankle joint must be torn loose. There could be a more painful fracture than that. This is considered one of the worst injuries to the ankle." We think the allegations in the petition were sufficiently comprehensive to include the injury described in the testimony.

By the thirteenth and fourteenth assignments of error objection is made to certain remarks by the attorneys for the City of Fort Worth and the appellee. As to the remarks made by the attorney for the city, it is sufficient to say that these were withdrawn by the attorney upon objection being made, and the court also instructed the jury to disregard them. We do not think they were of such an inflammatory character that the error, if any, in making them could not be cured by the proceeding adopted. The remarks of counsel for the appellee are not such, we think, as should reverse this case. They consisted mainly of replies to the remarks made by the attorney for the appellant and conclusions and comments, and were not such as to mislead the jury concerning the testimony or to inflame their prejudices against the appellant for any reason.

The remaining assignment of error complains of the verdict as being excessive. Mrs. Walton, plaintiff's sister, testified that she felt of plaintiff's ankle immediately after the injury was received, and the bones were sticking out; that when they got her home it was perfectly black; that for a few minutes after she first fell she was unconscious; that for fully six weeks plaintiff scarcely slept at all at night, never sleeping more than fifteen minutes at a time; that she was never able to go back to work after she was hurt, and that at the time of the trial she experienced great difficulty in going up and down stairs; that she could not stand on that foot at all without her shoes; that when the weather changes the pain is excruciating in that ankle; that she could not wear the same shoes she had been accustomed to; that she can not wear a low-quarter shoe—that she must wear a shoe laced up around the ankle, and has to have the heel lowered; that the circulation of this limb seemed to stop almost entirely, and until now (at the time of the trial) she has to use hot water bags always in order to let her get to sleep. Dr. Creagin testified: "This is considered one of the worst injuries of the ankle. I don't know what percent of them ever get stout again." The plaintiff testified: "They gave me something for my

limb—I was suffering such intense pain from it; it was swollen from the toes to the hip; ......every time I had to turn, if I moved my arm, I was sore all over from the jar, and then next morning the doctor came to see how I was, and I asked him for medicine— the fall had given me such a shock, my nerves were all shattered, and I also asked for medicine for my kidneys, and he gave me medicine for them; I had never had trouble with them before," etc. She again testified: "I suffered the whole time and have never gotten over the suffering. Whenever it is damp or cold my limb hurts me. The ankle swells and I have to wear my shoe laced up tight to brace the ankle; ......the ankle has never recovered its usual strength; ......it pains me whenever I walk very much— swells; ......I suffered at the time I married; I have never .ceased suffering from it. Hot water bags were used for relief of my left limb and also my left kidney. In reference to the kidney, I suffered a great deal. I feel a soreness there and I have to drink mineral water to make them act all the time. I am not free since I was hurt of having to drink mineral water, and at first I had a great deal of trouble in making them act. The doctor had to give me something to act on them, and since then if I cease drinking mineral well water I have trouble so that I have to have something like that to make them act. I suffer a great deal of pain from it. I never had kidney trouble before this injury; ......from the time I was injured until the time I was married I did not do any labor of any kind—was not able to. I was not able after I married to perform the usual and ordinary labor connected with household duties." Galveston H. & S. A. Ry. Co. v. Stevens, 94 S. W., 395; Missouri Pac. Ry. Co. v. Lehmberg, 75 Texas, 67; Gulf, C. & S. F. Ry. Co. v. Pendery, 87 Texas, 556; Galveston, H. & S. A. Ry. Co. v. Henefy (115 S. W., 57), decided at this term by the Court of Civil Appeals, Fourth District. In view of this and other evidence concerning the extent of the injury and suffering, we can not say that the verdict was excessive. The judgment is affirmed.

ON MOTION FOR REHEARING.

Upon further consideration we have reached the conclusion that we were in error in overruling the appellant telephone company's assignment complaining of the action of the trial court in entering judgment against it for the full sum of $7,500.00 upon the verdict returned. The verdict in this case is distinguishable from that rendered in the Bowles case referred to in the original opinion. There the jury made a general finding in favor of the plaintiff for the sum of $10,000.00, and then undertook to apportion it between the defendants. Here they only find specifically against each of the defendants for a designated sum. If we reject as surplusage that portion of the verdict in this case which apportions the damages among the defendants, we shall have nothing left upon which to predicate a judgment in favor of the plaintiff for any sum. In cases where verdicts such as this have been returned the authorities are opposed to the rule of rendering judgment against the defendants

jointly for the aggregate sum. Where the jury simply assesses the damages for a specific sum against each of two or more defendants, there are two methods of curing the irregularity. According to one line of cases, the plaintiff may elect his best damages and have judgment entered for that amount against all of the defendants found guilty jointly. According to another, he may select which of the defendants he will take judgment against for the sum assessed against him. Fort Worth, T. & O. Ry. Co. v. Enos, 39 S. W. 1905. See also cases cited in notes to N. R. & L. Co. v. Trawick, 10 L. R. A. (new series) 192, where the authorities upon this subject are collated. The City of Fort Worth, against whom the trial court rendered judgment jointly with the appellant telephone company for the aggregate amount, makes no complaint and has prosecuted no appeal. The error as to the telephone company can be cured by a remittitur, without reversing and remanding the case. We have carefully considered the arguments advanced in the motion for a rehearing as to the remaining assignments of error passed upon in the original opinion, and find no reason for altering the decision formerly made as to them. But for the error indicated the judgment of the District Court will be reversed and the cause remanded, unless the appellee shall within twenty days from this date file in this court a remittitur of $1,500.00 of the amount adjudged in her favor by the trial court. In case this is done the judgment will be affirmed. It is further ordered that the appellee pay all costs of this appeal.

*Affirmed on remittitur.*