**MOORE v. LEVERETT et al.**

No. 1349—5902.

Commission of Appeals of Texas, Section B.
July 19, 1932.

W. S. Moore, of Gainesville, for plaintiff in error.

W. O. Davis and Adams & Jones, all of Gainesville, for defendants in error.

RYAN, J.

This suit was filed by W. S. Moore in the district court of Cooke county against W. W. Leverett and A. E. Hermann, owners and editors of a certain newspaper known' as the Gainesville Signal, to recover actual and exemplary damages, for an alleged libel growing out of the publication in said newspaper of a certain article of and concerning said Moore.

The trial court sustained exceptions to the petition, and, plaintiff having declined to amend, rendered judgment for the defendants, which was affirmed by the Court of Civil Appeals. 33 S.W.(2d) 838.

The petition alleged, in substance, that on or about July 16, 1926, plaintiff, Moore, was judge of the Sixteenth judicial district of Texas, composed of Cooke and Denton counties, was a man of good name, character, and reputation, and a candidate before the Democratic primaries held on July 24, 1926, for a renomination; his opponent being A. C. Owsley of Denton county, when defendants published in said newspaper, under the heading "The District Judgeship," an article signed by W. O. Davis.

Among other statements contained in said article was the following language, viz.:

"W. S. Moore, seems to think that he ought to be elected by the people because the lawyers are opposed to him. The lawyers are Moore's nearest neighbors and know more about him than anyone else. When did a man have the impudence to claim that he was entitled to an office ·because his neighbors did not have a good opinion of him? We should distrust the man who claims to have bad neighbors; the fault is generally with himself. It is no recommendation to a lawyer that other members of the bar have a poor opinion of him; they are familiar with his methods; they have been consulted by people who have had dealings with him."

It was alleged:

"That'by said language above quoted from said article so published by the defendants, it was meant and intended to mean that the plaintiff had been guilty of dishonest and dishonorable conduct, and of dishonest, dishonorable and corrupt practices, as a lawyer, and that he had defrauded his clients and had engaged in criminal conduct towards the rights of his clients and their rights in his capacity as an attorney."

It was further alleged that there was used and published in said article the following additional language:

"I note that R. R. Bell, our former County

attorney and now a resident of Oklahoma City, has rushed into print advocating the election of W. S. Moore. The people remember how R. R. Bell prospered as county attorney. W. S. Moore learned under him. Nothing more need be said."

It was averred:

"That by the use of the last above quoted language it was meant and was intended to mean and charge that the said R. R. Bell, who was at one time County attorney of Cooke County, Texas, and while acting as such, had been guilty of dishonorable, dishonest and corrupt conduct as such county attorney and that by such practices he had prospered illegally in a financial way, and that by use of said language it was meant and intended to mean that the plaintiff W. S. Moore had learned corrupt, dishonorable and dishonest practices as a lawyer from and under the said R. R. Bell, and that the plaintiff had been guilty of dishonesty and of improper conduct in his practice as a lawyer.

"The plaintiff further alleges that the defendants did publish all the above quoted language in said newspaper as above said of and concerning the plaintiff W. S. Moore and that all of the same was false and defamatory and untrue.

"Plaintiff further alleges that by the use of said language and by said language it was meant, and was intended to mean what is hereinabove alleged, and he further alleges that the meaning as hereinabove alleged of said language, was the meaning which the ordinary reader of said language would take and accept from the reading of the same."

It was further charged:

"That on account of and by means of the publication of the said false and defamatory words and language as above set forth, the plaintiff has been injured and damaged in his good name and reputation and that many people throughout the said Judicial district and the State of Texas, generally, unfamiliar with the facts, were led to believe, as was intended by said language so published that they should believe, that plaintiff had been guilty of dishonesty and corrupt practices and of defrauding his clients as a lawyer, and of defrauding other persons, and was generally guilty of improper and unbecoming and fraudulent conduct, and plaintiff alleges that by reason of the publication of said language he has been damaged in his reputation and has been damaged in the practice of his legal profession, and has suffered the loss of money on said account, and has been caused to suffer great humiliation and mental agony and distress and that he has suffered great mental distress and agony on account of the said wrongful acts of the defendants.

"Plaintiff further alleges that on account of the publication of said defamatory words and language, he has been caused to suffer loss and damage in his profession as a lawyer, and that by the publication of said words and language, which he alleges are false and untrue, but that he has suffered great damage otherwise, and he further alleges that the publication of said language and its misleading and damaging effect, caused him the humiliation of defeat for the office of District Judge of said Judicial district and the honor and emoluments of said office."

Also:

"That said language and words so published were not only not true, but that they were wilfully, maliciously and knowingly published by the defendants with intent to injure the plaintiff and deprive him of his good name and reputation and for the purpose of causing him to lose the esteem of his friends, neighbors and acquaintances and the public generally, and that said language was maliciously so published by the defendants without investigating the truthfulness of the statements therein contained and well knowing at said time that the said W. O. Davis was a bitter personal and political enemy of this plaintiff and had been so for many years, and plaintiff further alleges that at the time of said publication the defendant W. W. Leverett was also a bitter personal and political enemy of this plaintiff, and that said language was published and circulated with malicious intent to injure this plaintiff."

And:

"The use of the language herein above quoted in paragraphs 2 and 3 above and as published said language was intended to mean and did mean what was in said paragraphs alleged, and he further says that such meaning was the natural and ordinary meaning that would be given to it, and was given to it by the average reader of said language as so published."

It was further alleged:

"That defendants well knew when they published said language above quoted concerning plaintiff and R. R. Bell, that said Bell had ceased to be County Attorney of Cooke County, Texas, long before this plaintiff ever formed his acquaintance, and that this plaintiff was never at any time connected with said Bell as County attorney, but that they became law partners long thereafter."

## Opinion.

█ A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information, if published without actual malice, is deemed privileged. Rev. Stat. 1925, art. 5432.

█ If we cannot say, as a matter of law, that the alleged libelous publication was a reasonable and fair comment or criticism of official acts or of matters of public concern and published without actual malice, then the

issue is one of fact under all the circumstances, and cannot, in the absence of proof and evidence, be determined on general demurrer. Cotulla v. Kerr, 74 Tex. 89, 11 S. W. 1058, 15 Am. St. Rep. 819; 25 Cyc. 437.

If. the publication itself, on its face, is not libelous and by innuendo not shown to be libelous, then of course a general demurrer will lie. But when by innuendo the matter complained of is connected with other facts and circumstances sufficiently stated, the meaning and application of the charge can be shown.

The innuendo cannot enlarge or restrict the natural meaning of words, introduce new matter, or make certain that which was uncertain, except in so far as it connects the words published with the extrinsic or explanatory circumstances alleged. But if the words are equivocal or ambiguous and admit of several meanings, it is proper to attribute to them in the innuendo the fixed and definite meaning which plaintiff thinks they ought to bear. 37 C. J. 24.

The language as a whole must be construed together in the light of all the facts and circumstances to determine its libelous character. Cranfill v. Hayden, 97 Tex. 544, 80 S. W. 609; Express Pub. Co. v. Wilkins (Tex. Civ. App.) 218 S. W. 614, 618; Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 152 S. W. 167; 17 R. C. L. 350.

The averment that R. R. Bell, former county attorney and now a resident of Oklahoma City, has rushed into print advocating Judge Moore's election, and that the people remember how said Bell prospered as county attorney, that Moore learned under him and nothing more need be said, is, we think, clearly susceptible to the innuendo that Bell was guilty of questionable conduct, in a financial way, by which he prospered illegally, and Moore, having learned under him, had acquired the same practices. This, coupled with the statement that lawyers were opposed to Moore—they know more about him than any one else, they have been consulted by people who have had dealings with him—with the final admonition, "nothing more need be said," in our opinion, states a cause of action.

To make a statement that a public officer is actuated by evil or corrupt motives in a public undertaking is to make a statement of fact which should be justified like any other statement of fact in order to exonerate the person making the statement. Belo & Co. v. Looney, 112 Tex. 160, 246 S. W. 777.

The ordinary reader might conclude from the article that lawyers were opposed to Moore because they were familiar with his methods, having been consulted by people who had dealings with him, that such methods were questionable, and that Moore had learned how to prosper illegitimately therefrom;

the expression "nothing more need be said" carries the implication that he was guilty of other dishonorable acts and practices.

The test as to meaning of language used is that which would be placed thereon by the average person or the general public, and it is ordinarily the province of the jury to determine, under such test, the meaning of the language used. Koehler v. Sircovich (Tex. Civ. App.) 269 S. W. 812; Belo & Co. v. Smith, 91 Tex. 225, 42 S. W. 850; Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 152 S. W. 167; 36 C. J. 1161.

It was alleged in the petition that publication was maliciously made. Malice when properly alleged becomes a question of fact, and cannot be determined on general demurrer. Bradstreet Co. v. Gill, 72 Tex. 117, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768; Behee v. Railway Co., 71 Tex. 424, 9 S. W. 449; Express Pub. Co. v. Wilkins (Tex. Civ. App.) 218 S. W. 614; 31 Cyc. 269.

Actual malice cannot be inferred from the character of the language used without other evidence to indicate it. Nunn v. Webster (Tex. Com. App.) 260 S. W. 157; Missouri Pac. Railway Co. v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794; Belo v. Fuller, 84 Tex. 450, 19 S. W. 616, 31 Am. St. Rep. 75.

As said in Jenkins v. Taylor (Tex. Civ. App.) 4 S.W.(2d) 656, 658: "The conduct and character of public officials and candidates for office have a public interest and are open for discussion in the press and otherwise. So long as statements can be properly characterized as fair criticism of or comment upon their acts and conduct, there can be no action for defamation of character. This rule, however, has never been extended to statements of fact regarding acts and utterances of officers or candidates. The same rule with reference to a false statement of fact regarding an individual in private life applies to candidates and officers; and the law protects their reputation with the same sanctity. Cotulla v. Kerr, 74 Tex. 89, 11 S. W. 1058, 15 Am. St. Rep. 819; Democrat Pub. Co. v. Jones, 83 Tex. 302, 18 S. W. 652; Belo v. Looney, 112 Tex. 160, 246 S. W. 777; Galveston Tribune v. Johnson (Tex. Civ. App.) 141 S. W. 302 (writ of error denied); Ferguson v. Houston Press (Tex. Civ. App.) 1 S.W.(2d) 387; Times Pub. Co. v. Ray (Tex. Civ. App.) 1 S.W.(2d) 471."

We recommend that the judgments of the Court of Civil Appeals and trial court be reversed, and the cause remanded for another trial.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.