## GREAT ATLANTIC & PACIFIC TEA CO.
### et al. v. HARRIS.
### No. 1214.

Court of Civil Appeals of Texas. Eastland.
Oct. 5, 1934.

Rehearing Denied Nov. 2, 1934.

Touchstone, Wight, Gormley & Price, of Dallas, and Scarborough & Ely, of Abilene, for plaintiffs in error.

Stinson, Hair, Brooks & Duke and J. J. Watts, all of Abilene, for defendant in error.

HICKMAN, Chief Justice.

This suit was instituted by defendant in error, G. C. Harris, against plaintiffs in error the Great Atlantic & Pacific Tea Company and E. L. Grubbs to recover damages for · slander. Harris was manager of the grocery department of a store owned by the tea company, and M. T. Cornelius was manager of the meat department operated in connection therewith. Plaintiff in error Grubbs was assistant superintendent and supervisor for the tea company of ten stores in West Texas, including the Hickory street store in Abilene, in which Harris and Cornelius were employed. The allegations of slander contained in the petition were in this language:

"That on or about the 10th day of May, 1932, the defendant, E. L. Grubbs, acting for himself and as the agent, employee and official of said Great Atlantic & Pacific Tea Company, and acting within the scope of his employment and authority, and knowing plaintiff's good name, character and reputation for honesty, integrity and fair dealing, in said Hickory Street store building and during the hours, which said store was open for business on said day to the public and in the presence and in the hearing of M. T. Cornelius, Oscar Echols and H. C. Boyer, the last two mentioned being at the time customers in said store, and being in said store on the express and on the implied invitation of said corporation defendant and in the presence of other parties in said store not employees of said store but whose names and residences are to plaintiff unknown, in a loud and angry tone of voice said, 'I have a letter from Mr. Crocker (meaning R. C. Crocker, official, agent, manager and party

in control of said defendant corporation's business in Texas with headquarters at Dallas, in Dallas County, Texas) and Mr. Crocker was very much disturbed about the robberies, (meaning the robberies and burglaries of said Hickory Street store during the year 1932). Harris, you know yourself it looks like an inside job, (meaning that the parties then working in said Hickory Street store and who had worked in said store when said robberies occurred were guilty of the burglaries which had occurred during the year 1932 of said store and also meaning and intending to mean that this plaintiff was guilty of said burglaries and meaning and intending to mean that E. L. Grubbs and the said corporation defendant believed that this plaintiff was guilty of said burglary, and meaning and intending to mean that this plaintiff was guilty of said burglaries) and unless it is stopped I am going to have to let you and Cornelius go' (meaning and intending to mean that plaintiff and Cornelius, manager of the meat department of said store, were guilty of the burglaries which had occurred to said store). To which the plaintiff then and there replied, 'I did not have a damn thing to do with it. All I could do was to run the store in the day time and close it up at night.'

"In this connection plaintiff alleges that previous to said conversation last mentioned between plaintiff and defendant E. L. Grubbs, that the said Hickory Street store had had four burglaries during the year 1932. That these facts were well known to the said Grubbs and to the said R. H. Crocker and to the superintendents and supervisors of the district of said defendant corporation in which said Hickory Street store was located. That said superintendents and supervisors, said E. L. Grubbs and the said Crocker, each and all knew that the plaintiff and M. T. Cornelius had, during all of the year 1932 been manager of the meat department and grocery department of said store. That during said year 1932 there was only one other regular employee in said store, to-wit, Fred Starbuck, and this was well known to the superintendent, supervisor and the said Crocker. That the said E. L. Grubbs, by the use of said language as above set out, meant and intended to mean, and charge, that this plaintiff was guilty of the burglaries which had occurred at said store and that this plaintiff had been guilty of burglary and theft and dishonesty on four different times, there having been four burglaries. Plaintiff further alleges that by the use of said language it was meant and intended to mean what is hereinbefore alleged that the meaning, as hereinbefore alleged of said language was the meaning which the hearers present understood such language to mean and that such meaning, as hereinbefore alleged, is the meaning which the ordinary hearer of such language would understand to be meant by the said Grubbs' use of said language."

The case was submitted to a jury upon special issues, and upon the answers returned thereto judgment was rendered in favor of Harris against Grubbs for $425, and against the tea company for $4,000. The brief of plaintiffs in error contains eighty-eight assignments, but, since we have determined that the case must be retried, we shall discuss only those assignments upon which a reversal of the judgment is ordered and those presenting questions which may arise upon the next trial.

 It is first assigned that the court erred in overruling the motion of plaintiffs in error for an instructed verdict, for the reason that the evidence made out no case of slander. The testimony corresponded minutely with the allegations above set forth. There was further testimony to the effect that, within a few days after the alleged slanderous words were spoken, defendant in error and Cornelius were discharged, but at that time Grubbs informed Harris that he did not think the burglary had anything to do with it. The question presented by the assignment is that there was no issue to be submitted to a jury because, as a matter of law, the words spoken were not slanderous. We cannot sustain this contention. In determining whether words are defamatory, they must be interpreted in connection with all the surrounding circumstances in which they were uttered. Moore v. Leverett (Tex. Com. App.) 52 S.W.(2d) 252. The question is: What meaning would be placed upon the language by the ordinary person who might hear it? The law is concerned with the effect which the utterance might have upon the reputation of the person claimed to be defamed by its use. We cannot hold, as a matter of law, that this language, taken in connection with all the surrounding circumstances under which it was uttered, was not reasonably susceptible of being understood by the ordinary hearer as charging Harris with the crime of burglary. If so, it would support an action for damages for slander. A. H. Belo & Co. v. Smith, 91 Tex. 221, 42 S. W. 850; Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 152 S. W. 167; So. Pub. Co. v. Foster (Tex. Com. App.) 53 S.W.(2d) 1014; Moore

v. Leverett, supra; Koehler v. Sircovich (Tex. Civ. App.) 269 S. W. 812; Perry Bros. Variety Stores v. Layton, 119 Tex. 130, 25 S.W.(2d) 310; Clark v. Bohms (Tex. Civ. App.) 37 S. W. 347. The case of Bull v. Collins (Tex. Civ. App.) 54 S.W.(2d) 870, relied upon to support this assignment, does not announce a contrary doctrine.

 The next contention is that, as a matter of law, the statement made by Grubbs was not made in the course of his employment, and that therefore no liability exists against his employer on account of its utterance. We overrule this contention. An *action is sustainable against a corporation for defamation by its agent, if such defamation is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty.* Neither express authorization nor subsequent ratification is necessary to establish liability. Mo. Pacific Ry. v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794; Southwestern T. & T. Co. v. Long (Tex. Civ. App.) 183 S. W. 421; Producers Refg. Co. v. Frazier (Tex. Civ. App.) 283 S. W. 880; Providence-Washington Ins. Co. v. Owens (Tex. Civ. App.) 207 S. W. 666; Houston Printing Co. v. Jones (Tex. Civ. App.) 282 S. W. 854; Priest v. Central State Fire Ins. Co., 223 Mo. App. 122, 9 S.W.(2d) 543; Daughtry v. Blanket State Bank (Tex. Civ. App.) 41 S.W.(2d) 527; Magnolia Pet. Co. v. Guffey (Tex. Civ. App.) 59 S.W.(2d) 174. The evidence discloses that Grubbs was supervisor and assistant superintendent for his employer, and that his authority was broad, including the right to employ and discharge managers of local stores within his district, particularly in cases of emergency. An issue of fact was presented as to whether he was in the discharge of his duty to his employer to protect the store from burglaries when he uttered the alleged slanderous words, and as to whether they were uttered in the furtherance of the business of his employer. We cannot therefore hold, as a matter of law, that his employer should not be charged with liability therefor.

 The next question presented is that the verdict *does not support the judgment rendered,* in that there was irreconcilable conflict between the answers of the jury to material issues. Issue No. 10 was in this language: "What sum of money paid to the plaintiff at this time by the defendant E. L. Grubbs would reasonably compensate him for the damages he has sustained, if any you have found?" To this issue the jury answered: "$425." Issue No. 11 was: "What sum of money paid in cash at this time to the plaintiff by the defendant The Great Atlantic & Pacific Tea Company would reasonably compensate him for the damages he has sustained, if any you have found?" To this question the jury answered: "$4,000." As a guide to the jury in answering these two issues, the court gave the following instruction: "In connection with question No. 11, you are instructed that in determining issues numbers ten and eleven, you may consider any mental pain, suffering, humiliation or embarrassment of the plaintiff G. C. Harris, if you find he has suffered such, caused by the words used to him by the said E. L. Grubbs, on or about May the 10, 1932, in the A & P Store on Hickory Street, in Abilene, Texas, if you have found the same were spoken by the said E. L. Grubbs to plaintiff G. C. Harris, and you may likewise consider any injuries the plaintiff has suffered, if you find he has suffered any injuries to his good name, reputation and social standing with the public."

It is clear to our minds that these answers are in such irreconcilable conflict as to be mutually destructive. Each issue called for the determination of one fact; namely, the amount of plaintiff's damages. Each answer was, under the instruction of the court, to be arrived at by estimating the damages caused by the language uttered by E. L. Grubbs on a certain day in a certain place. The question of who should pay such damages was wholly immaterial, and the amount thereof would be just the same if paid by Grubbs as it would be if paid by the other defendant. Suppose that, instead of submitting both issues 10 and 11, the court had submitted this one issue: "What sum of money paid in cash at this time to the plaintiff would reasonably compensate him for the damages he has sustained, if any you have found," and that, in answer to this issue, the jury had stated: "The plaintiff has sustained damages in the sum of $425, if the defendant Grubbs pays it, but he has sustained damages in the sum of $4,000 if the defendant The Great Atlantic & Pacific Tea Company pays it." Would it have been contended that the jury's verdict was an answer at all to the issue submitted? We think not. But it would certainly have been just the same answer as that which it did return. An essential fact finding to support any judgment for the plaintiff was the amount of his damages. That fact has not been found by the jury in this case, and judgment against either of the defendants for any amount was unauthorized.

The case is to be distinguished from the cases of S. A. & A. P. Ry. Co. v. Bowles (Tex. Civ. App.) 30 S. W. 89; Id. (Tex. Civ. App.) 30 S. W. 727; Id., 88 Tex. 634, 32 S. W. 880, and City of Fort Worth v. Williams, 55 Tex. Civ. App. 289, 119 S. W. 137. Those cases were submitted under general charges, and there was not in the verdict in either case a conflict as to the amount of damages suffered by the plaintiff. The question discussed in those cases was the apportionment of liability between the defendants, and not a conflict in the verdict as to the amount of damages sustained by the plaintiff. The question presented in this case would never arise in a case submitted under a general charge.

We cannot reform the judgment in the instant case in accordance with any of the suggestions made by the defendant in error. This for the reason that the jury has not found the amount of his damages, and clearly we would not be authorized to do so.

Ordinarily, when a case is sent back for retrial, we do not deem it necessary to pass on questions of the admissibility of evidence at the former trial, but, on account of the different views entertained by counsel on the question of admissibility of evidence in this record, it appears that the same questions will likely arise upon the next trial, and we therefore express our general views thereon without discussing separately the many assignments relating thereto. The suit was for damages resulting in a specific tort; namely, slanderous words uttered by Grubbs on a given occasion. For the damages suffered by the defendant in error because of this slander, the plaintiffs in error should respond, but for damages not shown to have any connection with, or growing out of, that particular tort, plaintiffs in error are not liable, and evidence thereof should be excluded. We shall consider one bill of exceptions as a type of many mentioned in the brief. A witness, over the objection of the plaintiffs in error, was permitted by the court to testify that a third party told her that a traveling man told him "that they were telling" that they always made it a rule to let out their managers whenever they had two or three or four burglaries. This evidence was given in answer to the question, "What did you hear as to why he was discharged?" Even if this suit had been based upon alleged damages for a wrongful discharge, this evidence would not have been admissible, because it was clearly hearsay, but the damages sought here were not for a wrongful

discharge. They were for the utterance of slanderous words, and we can see no proper connection between this testimony and the slander. For authorities more or less in point upon the question presented, see S. H. Kress & Co. v. Lindley (Tex. Civ. App.) 46 S. W.(2d) 379; Vacicek v. Trojack (Tex. Civ. App.) 226 S. W. 505.

For the errors pointed out, the judgment of the trial court will be reversed and the cause remanded.