## A. H. BELO & CO. v. C. R. SMITH.

No. 592.—Decided November 18, 1897.

**1. Jurisdiction of Supreme Court—Libel.**

The provision of Rev. Stats., art. 996 (3), making the judgment of the Court of Civil Appeals final in cases of slander, does not apply to actions for written defamation, and the Supreme Court has jurisdiction to grant writ of error in a libel suit. (Pp. 224, 225.)

**2. Libel—Criminal Charge—Arrest.**

A publication stating that plaintiff was arrested in Missouri on a warrant sworn out by one who had sued him there for money advanced to him, sufficiently imports an arrest upon a criminal charge, to the mind of the ordinary reader, to support, upon proper allegations and proof, a recovery for libel. (Pp. 225, 226.)

**3. Case Approved.**

The rulings of the Court of Civil Appeals in this case approved. (P. 226.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Cooke County.

C. R. Smith recovered a judgment against A. H. Belo & Co. for libel, in the sum of $1000, which was affirmed on appeal by defendants, who obtained writ of error.

*Willie, Campbell & Ballinger*, for plaintiffs in error.—An innuendo can only aver the meaning of the words used, and cannot add to, enlarge or change the sense of the words. 1 Starkie, 418; Odgers, 106; Starkie, 355 and note; Flood, 314; Townsend, 564, 111, n; Watson v. Nicholas, 6 Hump., 174; Beardsley v. Tappan, 1 Blatch. C. C., 588, Dorsey v. Whips, 8 Gill, 457; Nichols v. Packard, 16 Vt., 83; Joralemon v. Pomeroy, 22 N. J., 271; Lindsey v. Smith, 2 Johns., 359; Lukeheart v. Bierly, 53 Pa. St., 418; Stucker v. Davis, 8 Blackf., 414; Cramer v. Noonan, 4 Wis., 231; Patterson v. Edwards, 7 Ill., 720; Nolan v. Traber, 49 Md., 460; Gabe v. McGinnis, 68 Ind., 538; Com. v. Keenan, 67 Pa. St., 203; Weil v. Schmidt, 28 Wis., 137.

If the words themselves do not sound in libel, no meaning produced by the innuendo will make the action maintainable. Barham v. Nethersall, Yelverton, 21; Moseley v. Moss, 6 Grat. (Va.), 534; Dottarer v. Bushey, 16 Pa. St., 204; Brown v. Brown, 2 Shep. (Me.), 317; Lukeheart v. Bierly, 53 Pa. St., 418; Townsend, 566-571.

Where the whole of article complained of shows that no charge of mal-action was intended the plaintiff will not be permitted to select certain sentences upon which to base an action. Wilkes' case, 1 Roll., Abr., 51; Sibley v. Tomlins, 4 Tyr., 90; Thompson v. Bernard, 1 Camp., 48; Bittridge's case, 4 Coke, 19; Cristie v. Cowell, Peake 4; Day v. Robinson, 1 A. & E., 554.

It is not sufficient to allege words only amounting to an accusation of fraudulent conduct so long as it is not criminal. Haselton v. Weare, 8 Vt., 484; Yundt v. Yundt, 12 Serg. & R., 427; Perry v. Porter, 124 Mass., 338.

The words not being actionable in themselves and no attempt having been made to plead special damage the demurrer should have been sustained. Railway v. Richmond, 73 Texas, 575; Democrat Pub. Co. v Jones, 83 Texas, 302; Hirschfield v. Bank, 83 Texas, 453; Estees' Pleadings, secs. 1730, 1731.

The court erred in refusing to give the first special charge asked by the defendant, as follows: "Before the plaintiff can recover anything in this case, you must believe from the preponderance of the evidence that the true and correct meaning of the words used in the publications read to you in evidence is that the plaintiff Smith was arrested in Kansas City, Missouri, on a charge of a felony, by which is meant a crime punishable by confinement in the penitentiary, and that the felony was the obtaining of money from the Armour Bros. Banking Co. by false and fraudulent representations. And, if you do not so believe from the evidence that such is and was the meaning of the words used, then you must find for the defendant, though you may believe that no warrant was sworn out and that Smith was not in fact arrested on any charge."

Rev. Stats., art. 1317; Rodgers v. Broadnax, 24 Texas, 538; Railway v. Miller, 51 Texas, 270; Railway v. Tankersley, 63 Texas, 57; Cannon v. Cannon, 66 Texas, 682; Loving v. Dixon, 56 Texas, 75.

*Stuart & Bell, Davis & Garnett*, for defendant in error, on motion to dismiss.—Under art. 996, Rev. Stats., a decision of the Court of Civil Appeals is final in all cases of slander. The only question is whether "slander," as here used, comprehends both oral and written defamation of character. In the outset we should presume that the Legislature did not make any arbitrary or nonsensical distinctions. It would be absurd to suppose that the Legislature intended that if one man defame another with his tongue, he should have but one appeal, but if he defamed him with pen, brush or printer's ink, he should be entitled to two appeals. In all interpretations the court should look diligently for the intention of the Legislature, keeping in view at all time the old law, the evil and the remedy. Rev. Stats., art. 3268.

Now should we presume that it was the legislative intention to confer the right to a writ of error in case of written defamation of character and deny it in the case of verbal defamation? If so, where is the reason or sense for the distinction. "The ordinary signification shall be applied to words." Rev. Stats., art. 3268.

Webster says that slander is a false tale or report maliciously uttered and tending to injure the reputation of another, lessening him in the esteem of his fellow citizens by exposing him to impeachment and punishment, or by impairing his means of living; defamation—see edition of 1860. The compiler of the latest edition of Mr. Webster has added that in law, slander formerly embraced both oral and written defamation of character, but in modern practice, it means oral defamation. We cannot imagine, however, where the compiler obtained his authority for this statement. Mr. Bouvier in his law dictionary says that slander is the defaming a man in his reputation by speaking or writing words which affect his life, office or trade, or which tend to his loss of preferment in marriage or service, or in his inheritance, or which occasion any other particular damage. Written or printed slanders are libels.

Under former Constitutions and statutes the District Court had jurisdiction "of all suits to recover damages for slander or defamation of character." We submit that the context shows that in these former laws, slander or defamation of character were used as equivalent terms. The term libel no where occurs in any of our civil statutes. It has been used to designate the criminal offense, while slander designated the civil injury. Who ever thought of contending that under our former laws the County Court had jurisdiction of written defamation of character because the term libel was not used in enumerating the causes over which the District Court had exclusive jurisdiction. Slander is the generic term which embraces all defamation of character, whether written or oral.

Mr. Newell in his work on defamation, slander and libel, page 37,

gives the definition of the term slander as defined by the leading law writers, including Blackstone, Bacon, Bouvier and Kent. According to their definition, slander embraces all defamation of character, whether oral or written. In order to arrive at the Legislative intent, we should look to the meaning that the word had at the time it was used in the statute. If the meaning be afterwards changed by use or custom, that would not change the law. The word slander has had a place in our civil statutes ever since the enactment of the first law defining the jurisdiction of the District Court. When the word was first used in our statute, no definition could be found restricting its meaning to oral defamation only.

GAINES, CHIEF JUSTICE.—This suit was brought by defendant in error to recover of plaintiff in error, a corporation, damages for an alleged libelous publication which appeared in "The Dallas News" and "The Galveston News," two newspapers published by the latter. The plaintiff in the trial court recovered there a judgment, which was affirmed in the Court of Civil Appeals. A writ of error has been granted, and the case has been submitted, together with a motion to dismiss the writ for want of jurisdiction.

We considered the question of jurisdiction before we granted the writ; but upon examining the argument filed in support of the motion we find more difficulty in determining the point than we then apprehended. The statute which defines the jurisdiction of the Court of Civil Appeals provides that the judgment of that court shall be final in "1. Any civil case appealed from a county court or from a district court when under the Constitution a county court would have had original or appellate jurisdiction to try it, except in probate matters and in cases involving the revenue laws of the State or the validity of a statute. 2. All cases of boundary. 3. All cases of slander and divorce. 4. All cases of contested elections of every character other than for State officers, except where the validity of the statute is attacked by the decision." Rev. Stats., art. 996. The question is, does the word "slander" as used in the article include within its meaning actions for libel? The authorities leave but little doubt that at an early day in the history of the common law the term was applied both to oral and written defamations of character. Starkie on Slander and Libel, 3, and authorities there quoted. But we think it equally clear that in modern usage it is applied to oral defamation only. This is the case in its technical use as well as in its common acceptation. Looking to the reason of the provision, we are of opinion that the Legislature may have considered that there was good ground for allowing a writ of error in cases of written and for denying it in cases of oral defamation. Publications libelous per se were at common law punished as public wrongs; not so with slander. Under our statutes most libels are made penal offenses against the State, while only oral defamation which falsely imputes a want of chastity to a female is made a penal offense. Libels not infre-

quently involve questions which affect the liberty of the press, and which therefore are of great public importance. Written defamation is in its nature lasting and may be read by many, while oral defamation is ordinarily heard by but few persons. It is obvious therefore that in the former the injury is likely to be more serious and the damages greater. For these reasons, we are of opinion that the Legislature in the article quoted from used the word "slander" in its more restricted sense and conclude that we have jurisdiction of the case. Therefore the motion to dismiss is overruled.

The publication upon which the suit was brought was as follows:

"Arrested in Kansas City.

"Kansas City, Mo., Aug. 22.—C. R. Smith, of Gainesville, Texas, a stockman of considerable means, was arrested here last night on a warrant sworn out by the Armour Banking Co. of this city. The banking company brought suit in the circuit court in April, 1894, against Smith to recover $14,057, which it is alleged was advanced to him several years ago, but as Smith had not been in the State since then, the papers could not be served. He arrived in town yesterday with a load of stock, and was immediately arrested."

The petition averred in substance, it was meant that the plaintiff had been arrested in a criminal prosecution upon a charge either that he had obtained money under false pretenses or that having obtained it lawfully he had fraudulently misapplied it, and that either charge is a penal offense under the laws both of Texas and Missouri. We granted the writ because we were inclined to think that the language was not sufficient to support the innuendo. It seemed to us, construing all the words together, that they should be construed as alleging merely that the plaintiff has been arrested for debt. A further consideration satisfie us that in this conclusion we were mistaken. The question is, what effect would the publication have upon the mind of the ordinary reader? What construction would he have put upon it? For in defamatory language, it is not so much the idea which the speaker or writer intends to convey, as what he does in fact convey. It is the effect upon the character of the person alleged to be defamed by the utterance which the law considers, and therefore the utterer uses the language at his peril.

There is no arrest for debt under our laws and probably none under the laws of Missouri. The word "warrant" is a term of wide signification, and may be applied not inaptly to process in civil as well as in criminal cases, but as a general rule its use is restricted to such writs as authorize the taking of the body of the defendant to answer a criminal charge; and we apprehend that such is the sense in which it would be understood by one not learned in the law—unless perchance there was something in the context to show the contrary. The publication states, that the cause of the arrest was an advance of money by the Armour Banking Company to the defendant in error; and the whole writing is calculated to produce the impression that in the transaction there was

some criminal conduct, such as alleged in the innuendoes in the petition, which authorized his arrest. While it may admit of the construction that he had been arrested in a civil action for debt merely, we think that even if such arrest were permissible under the laws of Missouri, such a proceeding is so unusual that it is not probable that construction would be put upon it by the casual reader. The court, however, did not construe the publication, but treating its construction as doubtful left it to the jury to determine whether or not it was calculated to convey the idea that the defendant in error had been guilty of either of the offenses as charged in the innuendoes in the petition. Of this action on the part of the court we think the plaintiff in error has no ground to complain.

This disposes of the important question in the case. There are numerous assignments which raise other questions, but they are mainly points of practice, which we think were correctly determined by the Court of Civil Appeals. We deem it unnecessary to discuss them here.

Finding no error in the proceedings of the trial court which requires a reversal of the judgment, the judgment of that court and that of the Court of Civil Appeals are affirmed.

*Affirmed.*