ELLIS et ux. v. GARRISON.    (No. 739.)

(Court of Civil Appeals of Texas. Amarillo. March 6, 1915.)

1. LARCENY ⬥10—LOST GOODS.
Where a trunk was sold in which were goods unknown to both buyer and seller, the goods, so far as the parties were concerned, were lost, and the owner is deemed to still have constructive possession, so that they may be the subject of larceny by the finder.
[Ed. Note.—For other cases, see Larceny, Cent. Dig. § 21; Dec. Dig. ⬥10.]

2. LARCENY ⬥16—STOLEN GOODS—INTENT.
For a person to be guilty of the theft of lost goods, there must have been an intent to steal at the time of the finding, and knowledge or reasonable means of ascertaining the owner.
[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 43–45; Dec. Dig. ⬥16.]

3. LIBEL AND SLANDER ⬥66—RETRACTION—WHAT CONSTITUTES.
A storekeeper sold a trunk in which old hats were stored. The storekeeper's wife charged that plaintiff, the purchaser, stole the hats and stated that others encouraged her, following that charge by the statement that when the trunk was sold, it was not known the hats were in it. Held, that the last statement was not a retraction, showing as it did, that the hats were the subject of larceny.
[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 168; Dec. Dig. ⬥66.]

4. LIBEL AND SLANDER ⬥7 — LIABILITY — MEANING OF LANGUAGE.
The meaning of slanderous language must be ascertained from the language as commonly understood, and not from what defendant intended by it, and hence, regardless of defendant's intention, a charge that plaintiff stole hats stored in a trunk sold her was a charge of theft.
[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 17–78; Dec. Dig. ⬥7.]

5. LIBEL AND SLANDER ⬥120 — PUNITIVE DAMAGES—MALICE.
Where a statement was not privileged, implied malice, inferred from the wrongful act, may be sufficient to support an award of punitive damages.
[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 350, 351; Dec. Dig. ⬥120.]

6. LIBEL AND SLANDER ⬥123 — ACTIONS — EVIDENCE—JURY QUESTION.
Questions whether a charge was slanderous and whether punitive damages should be allowed held, under the evidence, for the jury.
[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. ⬥123.]

Appeal from District Court, Donley County; Jas. N. Browning, Judge.

Action by Miss Gracie Florence Garrison against C. H. Ellis and wife. From a judgment for plaintiff, defendants appeal. Affirmed.

H. B. White, of Clarendon, for appellants. E. A. Simpson, of Clarendon, and Reeder & Dooley, of Amarillo, for appellee.

HUFF, C. J. This is an action by Miss Garrison, appellee, against C. H. Ellis and his wife, Mrs. C. H. Ellis, appellants, for slander in accusing her of theft. From a verdict and judgment in favor of appellee for $350 actual damages, and $50 exemplary damages, appellants prosecute this appeal.

Appellants present four assignments of error. The first is the court should have peremptorily instructed a verdict for appellants, based on the proposition that even though some of the witnesses may have stated that appellants accused the appellee of theft, it was shown on each occasion that appellants gave the true facts with reference to such accusation, amounting to an immediate retraction of the charge, and for that reason the evidence was insufficient to show actionable slander. The second assignment complains at the action of the court in submitting vindictive or exemplary damages for the reasons set out in the first assignment and for the further reason that the statements were not made maliciously or with intent to injure the appellee. The third assignment because the verdict for $50 exemplary damages was not warranted by the evidence, for the reason that there was no evidence showing that the statements made by appellants were made maliciously or with intent to injure appellee. The fourth assignment, that the verdict of the jury is contrary to the evidence on the grounds set out in the first assignment of error.

It will be unnecessary to set out the pleadings in this case. The question presented for our consideration is whether there is any evidence in the record which warranted the court in submitting the case to the jury and whether the evidence is sufficient to support the verdict. Miss Garrison lived with appellants a short time before the transaction about which the slanderous language was used, and at the time of the transaction was living at Mr. Claude Wilkerson's. The a[...]

pellant Ellis was a merchant in the town of Lelia Lake, and Miss Garrison while living at Wilkerson's, purchased a trunk from the appellant Ellis, who sent it out to Wilkerson's for her. The testimony shows there were some ladies' old hats in the trunk when opened by Miss Garrison and Mrs. Wilkerson. They were burned up by them, one having been used as a bonnet around the place while at work by Miss Garrison for a short time, and when she left the place she had one of the hats which came in the trunk. It also appears that before burning the hats Miss Garrison had taken velvet off of one of them. Miss Garrison says that when she found the old hats in the trunk she supposed it was the purpose of appellants to give them to her. She had lived with them previous thereto, and the relation between the parties had been pleasant and friendly and Mrs. Ellis had given her some white waists and possibly other articles. The charge made included the taking of some furs, but Miss Garrison and Mrs. Wilkerson both testified the furs were not in the trunk and in fact the testimony develops the furs were never placed in the trunk, but were afterwards found at the home of appellants. It appears from the testimony that Mr. Ellis, when he sold the trunk and sent it out, did not know the hats or furs were in the trunk, or had been placed there by his wife previous thereto. Mrs. Ellis said she had stored her winter hats and furs in the trunk, which was in a room above the storehouse, and when she learned of the sale of the trunk, she proceeded to make investigation, which finally resulted in this suit for slander. Mrs. Wilkerson testified about Mrs. Ellis visiting her and about what they said to each other, stating that she had told Mrs. Ellis about finding the hats in the trunk and about burning them, etc. Afterwards she visited Mrs. Ellis at her home, and while there Mrs. Ellis— "told me that Florence stole the hats and furs and that we had encouraged her in doing it: that Mr. Wilkerson and myself had encouraged her to steal them; that was about all she said about it. She never said anything at all in that conversation about what she was going to do about it except that she was going to tell everybody in the whole country that she could see and talk to; and I said: 'Mrs. Ellis, I don't care what you tell just so you tell the truth; you can tell anything that is the truth about the hats and furs that Miss Florence is said to have stolen.' "

She testified when Mrs. Ellis first went to her house she told witness that she had stored the hats and furs in the trunk, and that Mr. Ellis sold the trunk without knowing the hats and furs were in there.

Claude Wilkerson testified he was the husband of the above-mentioned witness, and while he was in the store of Ellis, Ellis said he—

"wanted to know what went with the hats and furs that were in that trunk, and I told him there were no furs in there, and he said that there were some, and I told him the hats were destroyed, all but one, and Miss Florence took one with her, and he said that story was too

thin; that he did not believe the hats were destroyed, and I told him that they were. He said he did not blame Florence so much with it, but blamed me and my wife more than her, and he said he thought we encouraged her in stealing the hats and assisted her in stealing them. That is about all he said; that is, about Miss Florence stealing the hats. He said the furs were in the trunk also."

The witness further testified that Ellis told him he did not know the hats and furs were in the trunk when he sold it, and he did not say whether Miss Garrison knew they were in there or not when she purchased the trunk.

Will Albert testified that he was the brother-in-law of Claude Wilkerson, and that he heard part of the conversation between Ellis and Wilkerson. "All I heard Mr. Ellis say was that he said Miss Florence had stolen the hats, but he blamed Wilkerson more than he did Florence; that she was just a poor, ignorant girl." He testified that he afterwards heard about Ellis selling the trunk with the hats in it, and heard the matter frequently discussed at Lelia Lake at that time by several persons, not naming them.

Mrs. Fryar testified:

"About the 15th day of November, 1913, I went into the postoffice in Mr. Ellis' store to cash a money order. Mr. and Mrs. Ellis was in there, and I asked Mrs. Ellis how she was getting along, and she said, 'I am the maddest woman in the town.' I asked her what was wrong, and she said, 'I live in a den of thieves.' Mr. Ellis told her to hush and she said: 'Hush, hush; that is all I hear. I am not going to hush; I am going to tell it.' Then she told me that Mr. Ellis had put some of hers and the children's hats in a trunk upstairs in the store, and that he later sold the trunk to Florence Garrison, and forgot to take the hats out of the trunk, and that Florence kept the hats and never brought them back."

James L. Garrison, the father of the appellee, testified that Mr. Ellis called him out back of the store, saying he (Ellis) wanted to tell him about Florence stealing the hats and furs. The witness told Ellis that he knew nothing about it. Ellis stated that he knew that, and—

" 'I want you to know the straight of it,' and he told me that there were three or four hats in the trunk and some furs and two hats, two beaver hats that cost him $20 or $25, and that those furs cost him $40 or $50. He said that Florence stole the hats, and he wanted me to understand the straight of it as a man."

On cross-examination he testified:

"He said that he wanted me to know that he sold the trunk to my daughter, and he told me that the hats were in the trunk without his knowledge and without my daughter's knowledge."

Miss Garrison, appellee, testified that while she was in the post office Mrs. Ellis approached her and said:

" 'Florence, what are you going to do about those hats? You have stolen those hats.' I said nothing, because I burned them up and she said, 'You have stolen those hats, and, more than that, you have stolen from Mrs. Wilkerson."

She testified that Mrs. Ellis spoke in a conversational tone of voice, and she could

not say for sure that others in the store heard her, but does say Homer Ellis and Mr. Ellis heard what she, the witness, said. She named four persons in the store besides herself and Mrs. Ellis, and stated that the storeroom was rather a large one, and that Mrs. Ellis talked low and that a party must have been close to hear her. The facts show that Mrs. Ellis afterwards found her furs in her residence, and they in fact were not placed in the trunk by her.

This is substantially the testimony upon the issues presented by the assignments.

The truth of the charge was not asserted in the court below or urged in this court.

[1, 2] As we understand, appellant's contention is that the fact that appellant stated when he sold the trunk he did not know the hats were in the trunk, and did not accuse appellee of the knowledge that they were when she got the trunk, is of itself, when so stated by him in connection with the charge of theft, a retraction. This statement, as will be seen from the above facts recited by us, did not occur in the explanation of the charge made to each respective witness, especially those made by the wife. In Robinson v. State, 11 Tex. App. 403, 40 Am. Rep. 790, our Court of Criminal Appeals held, in a case where a trunk was sold in which there were goods unknown to both the buyer and the seller at the time the trunk was taken from the store, that the goods, so far as these parties were concerned, were lost, for neither knew of their existence or whereabouts. The status of the case, the court held, is precisely that of the finding of lost or mislaid goods; and the law governing such a finding is the law applicable to the facts of the case. The only distinction made in the theft of lost goods and theft of other property seems now to be that at the time of finding "the intent to steal must exist and the finder must know, or have reasonable means of knowing or of ascertaining, the owner." This rule, it is held by the court, in no wise contravenes the provision of our statute that the thing stolen must be taken from the possession of the owner. The owner of lost property is not divested of his right of property in it by the loss, and that right draws to it constructively the possession when found. Reed v. State, 8 Tex. App. 40, 34 Am. Rep. 732.

[3, 4] When appellant stated, "Florence stole the hats," and that others encouraged her to do it, or that they were living in a den of thieves, simply followed by the statement when the trunk was sold it was not then known the hats were in it, is to state, in so far as the parties to the transaction were concerned, the hats were lost; and simply following this statement that Florence did not return them does not, in our opinion, amount to a retraction. It had the appearance of clinching the charge by the evidence offered to the hearer by appellant. In so far as appellants were concerned, the goods were lost. The trunk was obtained

from appellants' store, and appellee should have known she did not buy them, and thereby the facts were reasonably sufficient to charge her with the knowledge of whose property the hats were. We think such a statement so made would commonly be understood as a charge of theft. The preceding declaration that she stole them was a direct charge of her fraudulent appropriation. On the question of actual and compensatory damages, it is not what appellants meant or intended by the words used, but what the words meant to the ordinary hearer. If the language is slanderous its meaning must be ascertained from the language as commonly understood, and not from what appellant intended by it. King v. Sassaman, 54 S. W. 304; Belo v. Smith, 91 Tex. 221, 42 S. W. 850, 851.

[5, 6] The question whether the statements made were with malice under the facts of this case was one for the jury under all the facts and circumstances. The statements charged were not privileged or qualifiedly privileged; hence actual malice was not required to be shown. Dickson v. Lights, 170 S. W. 834. "The malice to sustain the action for exemplary damages may be implied malice, implied or inferred from the wrongful act committed. King v. Sassaman, 54 S. W. 304; Cotulla v. Kerr, 74 Tex. 89, 11 S. W. 1058, 15 Am. St. Rep. 819. Malice may be inferred from the lack of probable cause, or punitive damages may be allowed where the defendant acted with recklessness or carelessness. 18 Am. & Eng. Enc. of Law (2d Ed.) 1092c, 1903 (2d Ed.); 25 Cyc. 536 (b) and note 4. In this case, while there is testimony that the relation of the parties was friendly, the facts show, or at least they are sufficient to have authorized the jury to find after appellants had been informed of the true facts, that is, that the hats when received were regarded as old and worthless, and were burned up, as of no value, and not appropriated to the use of the appellee, they nevertheless persisted in denouncing the act as felonious, asserting they were living in a den of thieves, and that others had assisted appellee in stealing the hats, and when appellee was accosted by Mrs. Ellis about it, she was not only denounced for that theft, but was accused of other thefts. It was asserted that they would tell others, and the wife was requested to hush, but asserted that she would not hush, but she was going to tell it to others, and when they were told the furs were not in the trunk, they nevertheless coupled the charge of theft with the furs, when as a matter of fact the furs were never in the trunk, but were in the home of appellants. If the facts do not prove actual malice, they show a strong case of reckless and careless disregard of the appellee's rights.

We think the facts sufficient to support the verdict, and the case will be affirmed.