Stanley CAUFIELD, Appellant,

v.

EL PASO TIMES, Inc., et al., Appellees.

No. 10319.

Court of Civil Appeals of Texas.

Austin.

June 8, 1955.

Butler, Williams & Stone, Robstown, for appellant.

Looney, Clark & Moorhead, Austin, for appellees.

GRAY, Justice.

Appellant sued the El Paso Times, Inc., and other individual defendants including appellee, Raymond Brooks, for libel. He alleged that:

"On and shortly after the 15th of May, 1953, the defendants, W. H. Fryer, William E. Clayton, Roy Vinson, Roy D. Jackson, Lucille Jackson and Woodrow Bean entered into an agreement to oppose and repel an investigation initiated by the House of Representatives of the State of Texas by the passage of a resolution entitled House Simple Resolution Number 293. In order to do this, they subsequently enlisted the assistance of defendants Art Liebson, Raymond Brooks, W. J. Hooten, William E. Ward, A. C. Gonzales, Jack Fant, as well as the defendants, The El Paso Times, Pearl Johnson, and Margarita Holman. The last named parties thereafter joined in the venture and actively participated therein in the manner hereinafter described.

"The general plan of agreement to repel, oppose, suppress and defeat the lawful investigation, entailed in part the unlawful attacks herein described upon the plaintiff by defendants in libeling him, slandering him, and attempting to disbar him. Each and all of the individual efforts hereafter described were done and performed pursuant to the general plan, design and collective desire of defendants, and would not and could not have occurred without the cooperation, intrigue and understanding of all defendants, although each was motivated to attack and repel because of his individual fear of undergoing lawful investigation as prescribed by the constitution, statutes of the State of Texas and the rules of the House of Representatives of the State of Texas; or through a desire to prevent and defeat the orderly conduct of the investigation in order to avoid 'bad publicity' to the El Paso district; or for the purpose of obtaining favor for himself or herself among the remainder of the conspirators; or in the last analysis, to protect, defend and shield persons of questionable reputation and character with whom one or more of the conspirators were associated."

Appellant alleged that in accordance with the general conspiracy the defendants em-

ployed appellee Brooks to communicate to them false statements from Travis County naming appellant as the instigator of an investigation in the House of Representatives of which appellant was a member from El Paso. He alleged that there was published in the El Paso Times (a newspaper published in El Paso and having a wide circulation) various statements in keeping with the plan of the alleged conspiracy to ruin and disbar him—appellant being a practicing attorney of the El Paso Bar; that as a predicate to the publications of September 30, 1953, and December 10, 1953, statements relative to the investigation and probe of gambling in El Paso were published, and that on September 30, 1953, statements were published as excerpts of a letter from defendant Pearl Johnson to a friend "and as a true description of a meeting between plaintiff and Pearl Johnson." (Pearl Johnson had been convicted of murder and was then confined at the Goree State Prison Farm for Women.) He alleged that further publications were made through October, 1953, and that "defendants again procured defendant, Raymond Brooks, to send to the El Paso Times for publication on December 10, 1953, the following false statement:

"Austin—Action of a small segment of El Paso Bar Association, in filing a complaint with the Association's Grievance Committee against a member of a special state legislative investigating committee, was denounced Wednesday in Austin.

"Members of the State committee, which recently held hearings in El Paso on charges of alleged gambling payoffs to certain El Pasoans, adopted a resolution calling on the El Paso Bar Association to explain its action.

"Rep. Stanton Stone of Freeport, who offered the resolution at a meeting of the group, stated in the official record that he was referring to Rep. Stanley Caufield of El Paso. He told the committee he resented the action of the bar association in El Paso against this individual member of the Legislature.

"Caufield helped push the gambling probe in El Paso which resulted from affidavits made by Mrs. Pearl Johnson that she was used as a 'carrier' by El Paso and Reno, Nev., gambling interests. She charged in her affidavits that certain El Paso men were receiving payoff money.

"Mrs. Johnson now is serving a 15-year penitentiary sentence at Huntsville for the murder of her newborn child."

Appellant alleged various innuendoes, however without a further statement of the pleadings we will quote his summary of the allegations. He says he was falsely accused by the El Paso Times of:

"1. Initiating and pushing a legislative investigation against Judge Roy D. Jackson, District Attorney William E. Clayton, and an attorney, W. H. Fryer, based solely upon the affidavit of a self-confessed prostitute and convicted murderess, Pearl Johnson.

"2. Soliciting from Pearl Johnson false affidavits against Jackson, Clayton and Fryer and promising her to be freed from prison if she would give the affidavits.

"3. Having consorted with Pearl Johnson on a sexual and emotional basis.

"4. Having served on the legislative investigating committee which investigated Judge Jackson, Clayton, and Fryer."

He further alleged that appellee was a member of the conspiracy to ruin and to disbar him by falsely accusing him in libel of:

"1. Unlawful conduct with a convict.

"2. Soliciting and publicizing falsehoods against fellow members of the El Paso Bar.

"3. Actually serving on the legislative committee which conducted the investigation against his fellow members of the Bar."

He alleged his damages.

Appellant's original petition was filed September 23, 1954, and he went to trial on his second amended original petition filed December 2, 1954.

Appellee answered and admitted that he furnished two statements published in the El Paso Times on May 14, 1953. The answer contained a general denial and a plea that appellant's alleged cause of action against him is barred by one year's limitation. Art. 5524, Vernon's Ann.Civ.St.

Appellee filed his motion to sever the cause of action as to him and also a motion for summary judgment. Both motions were granted by the trial court.

■ It is alleged that the conspiracy had its inception "on and shortly after May 15, 1953," and that the assistance of appellee was subsequently enlisted. The publications of May 14, 1953, were made more than one year prior to September 23, 1954, and any cause of action based thereon was barred by limitation. Art. 5524, supra. However we do not interpret appellant's cause of action to be so based but that it is based on publications made within less than one year prior to September 23, 1954.

■ Appellant presents six points. By points 1, 2 and 3 he complains that the trial court erred in granting appellees' motion for summary judgment and by points 4, 5 and 6 he complains that the trial court erred in granting appellees' motion for severance. In view of our conclusion that the trial court properly granted appellees' motion for summary judgment the error, if any, in severing the cause as to appellee was harmless. This is true because if as a matter of law appellee was entitled to a judgment because no genuine issue of fact as to any material matter was presented appellant was not harmed by the severance.

Appellant alleged that appellee furnished three statements for publication in the El Paso Times. Two of these were published May 14, 1953, and the third quoted supra, was published December 10, 1953. It is alleged that these statements were furnished in furtherance of the conspiracy—entered into on and after May 15, 1953, the assistance of appellee being enlisted subsequently.

Appellee's affidavit states that he is not acquainted with and has neither talked to nor corresponded with defendants:

"W. H. Fryer, Wm. E. Clayton, A. C. Gonzales, Lucille Jackson, Roy D. Jackson, Margarita Y. Holman, Wm. E. Ward, Jack Fant, Coyne Milstead, W. Roy Vinson and Pearl Johnson."

and that he has never made any agreement, or acted in concert, with any of them; that defendants

"* * * W. J. Hooten and Arthur H. Leipbson are, respectively, the editor of and a reporter for the defendant El Paso Times, Inc., and I am acquainted with both of them, * * *"

that he has never made any agreement with them or either of them, or acted in concert with them or with the El Paso Times, in any manner directly or indirectly affecting appellant, and that he has an agreement with the El Paso Times to furnish it, for a fixed sum, news in Austin that might be of interest in the El Paso area.

In his affidavit the defendant Bean said that he

"* * * never had any conversation, communication, or correspondence with Defendant, Raymond Brooks, relative to this suit or anything in connection with this suit until after this suit was filed. Any and all statements that I have made that have been printed in the El Paso Times were made by me in a telephone conversation to the El Paso Times from Austin, Texas, to an El Paso Times reporter, who was Bill James."

Appellant's affidavit states that shortly after the 53rd Legislature convened appellee came to his desk, introduced himself

and said that he was "the El Paso Times man in Austin"; that appellee would come to his desk and "chat" and that each time he would say that he was there for the El Paso Times; that sometime in the month of February appellee came to him and in the conversation at that time appellee remarked that

"I didn't rate too well with the Times, said they seem to be against you. I told him that Hooten and a reporter, Art Leibson, disliked me very much. Brooks replied, 'Yes, I know that.'"

He said that appellee always "graced his remarks" with the statement that "my paper wants this or my paper wants that"; that when the Johnson matter came up the resolution was introduced by Miss Blair assisted by Representative Owen, and that appellee was present; that the resolution was immediately referred to a committee; that appellee was present at the committee meeting and saw Owen helping Miss Blair; that appellee mentioned only appellant's name in his statement published May 14, 1953; that he protested to appellee about the publication and "he just shrugged it off"; that in July, 1953, he had a conversation with appellee in Austin and said:

"I said, 'Mr. Brooks, it is obvious now to me that certain people in El Paso whom we discussed during the regular session, Art Leibson and Bill Hooten, are out to get me, and they had a reason for having you show me as the prime mover in this situation down here,' and Mr. Brooks just said to me, 'Well, that's something I'm not going to discuss,' and turned around and walked off."

He said that before

" * * * the resolution calling for investigation was even introduced, Raymond Brooks, of the El Paso Times, came to get a story from me. I told Raymond Brooks that I was not going to have anything to do with introducing a resolution calling for an investigation. I was most emphatic on this point. Mr. Brooks said to me, 'May I ask you this question: Is anyone going to do anything about?' I told Mr. Brooks that it was my understanding that a resolution would be introduced, but I did not know as of that date, who would introduce it."

Referring to the December 10 publication supra appellant said:

"It is contrary to everything that I told him, and it is contrary to every piece of information which I furnished him in my effort to induce him to print the truth. His statement in the December 10th story, in which he says that Caufield helped push the gambling probe, was completely contrary to what I had told him in several conversations and contrary to what I had done, * * *"

and he said further that

"Raymond Brooks, at the time this was written, had seen the introduction of the resolution by Miss Blair, had seen Frank Owen assist her in this introduction, had been informed by me personally that I had nothing to do with the investigation as of May 14th, 1953, he had seen and digested the statements of various legislators about Woodrow Bean, and he well knew that the report he was writing on December 10th was false, in that it connected me with using the Pearl Johnson affidavits."

Appellant said that in a conversation he had with defendant Hooten:

"I told him that I could not understand his attitude toward me. Mr. Hooten on this occasion told me that he wasn't going to argue with me, that their Austin man, Mr. Brooks, had put the finger on me, and they knew damn well that I had started this thing, and 'Damn you, I don't want to have any more to do with you.' I left his presence on that occasion, and I have not seen him since. He also told me that if necessary, he would have Brooks testify in a court of law."

He said that he had a conversation with defendant Liebson in El Paso and that:

> "* * * he started the conversation with me by asking me this question: 'How are you coming along with your investigation?' This irritated me, and I said, 'That's not my investigation,' and he said, 'Oh, well, we know different. We've had the finger on you down at Austin all the time that you have been in the legislature.' "

He also said that in the early part of December, 1953, while in Austin he had a telephone conversation with appellee and that

> "* * * I told him on that occasion that he with his cohorts in El Paso, had been very successful in ruining me. And he remarked to me, 'Well, I guess you got what was coming to you,' and hung the phone up to me."

In her affidavit Miss Anita Blair said that appellee told her "I cover the things the El Paso Times tells me to cover." She said that she proposed the investigation into the gambling payoffs; that she introduced the resolution; that appellant had nothing to do with it, and that appellee knew the resolution was hers because he came to her desk after the resolution was introduced and asked "May I have a copy of your resolution?"

Appellant's cause of action against appellee is grounded on conspiracy, or in any event, on his allegations that appellee published a libel against him. As we understand the pleadings if the allegations of conspiracy fail then the only publication with which appellee is connected is the publication of December 10 supra—those of May 14, 1953 being before the agreement was entered into and before the assistance of appellee was enlisted, and both of which were published more than one year prior to the filing of the suit.

█ A conspiracy may be proved by direct or circumstantial evidence or by both but in order for there to be an issue of fact as to that matter there must be some evidence of the existence of the conspiracy. To be sufficient the circumstances relied on must have probate force and be more than sufficient to raise a mere surmise or suspicion. Such circumstances must be proved and not merely inferred. 17 Tex.Jur., Sec. 409, p. 907.

█ The affidavits before the trial court show that appellee was the representative of the El Paso Times in Austin, and that he forwarded statements to the paper which were published. There is no evidence of any agreement between appellee and the other defendants relative to publishing statements concerning appellee. The evidence shows only that appellee furnished statements which were published. The fact that these statements were true or false or that there was an issue of fact as to that matter is of little importance on the issue of conspiracy except that it is a circumstance to be considered along with the other evidence. At most, alone, it does no more than raise a suspicion, it does not lead to belief. Waco Drug Co. v. Hensley, Tex.Com.App., 34 S.W.2d 832. This may also be said of the evidence showing the hostile attitude of some of the defendants toward appellant. The statements made to appellant by defendants other than appellee were made out of his presence and because there was no other evidence showing the existence of a conspiracy these statements were not admissible against him. Reliance Ins. Co. v. Smith, Tex.Com.App., 66 S.W. 2d 675; North River Ins. Co. of New York v. Daniel, Tex.Civ.App., 101 S.W.2d 401. There is no evidence tending to connect appellee with the publication of September 30, 1953, and in the absence of proof of the alleged conspiracy it cannot be said that such publication was the act of a conspirator done in furtherance of the common object and for that reason admissible in evidence against appellee. 9 Tex.Jur., Sec. 22, p. 400.

There being no evidence to show the existence of the alleged conspiracy we will consider the publication of December 10, 1953. From this publication it can be said that appellant is identified as a member of

a Special State Investigating Committee; that a "small segment" of the El Paso Bar Association filed a complaint against him; that this action was denounced in Austin; that the Bar was called on to explain its action, and that appellant helped to push a gambling probe in El Paso which resulted from affidavits made by Mrs. Pearl Johnson.

Appellant says the statement that he pushed the gambling probe is false. He does not deny the other statements. In fact his affidavit shows they are true.

Libel is defined by Art. 5430, Vernon's Ann.Civ.St., and as applicable here the elements of that definition are:

"A libel is a defamation expressed in printing or writing, * * * tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, ' * * *."

 Art. 5432, Vernon's Ann.Civ.St., deals with privileged matters and in part provides:

"The publication of the following matters by any newspaper or periodical shall be deemed privileged and shall not be made the basis of any action for libel.

* * * * * *

"2. A fair, true and impartial account of all executive and legislative proceedings, including all reports of and proceedings in or before legislative committees and before each and all such committees heretofore appointed by the Legislature or either branch of the Legislature or hereafter to be appointed by such bodies or either of them and of any debate or statement in or before the Legislature or either branch thereof or any of its committees, and including also all reports of and proceedings in or before the managing boards of educational and eleemosynary institutions supported from the public revenue, of city councils or other governing bodies of cities or towns, of the commissioners' court of any county, and of the board of trustees of the public schools of any district, city or county, and of any debate or statement in or before any such body.

"3. A fair, true and impartial account of the proceedings of public meetings, dealing with public purposes, including a fair, true and impartial account of statements and discussion in such meetings, and of other matters of public concern, transpiring and uttered at such public meetings.

"4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information."

The provisions of Art. 5432 supra are not applicable to the facts before us for the reason that, in any event, it is alleged that the complained of statement is false. Even though the provisions of this statute extend to the author of the publication, Brinkley v. Fishbein, 5 Cir., 110 F.2d 62, it does not limit his defense. Art. 5433, Vernon's Ann.Civ.St.; Koehler v. Dubose, Tex.Civ.App., 200 S.W. 238, er. ref.; Galveston Tribune v. Johnson, Tex.Civ. App., 141 S.W. 302, er. ref.

When we consider the publication we see that the only statement complained of is the statement that appellant helped push the gambling probe in El Paso.

Then we are immediately confronted with the question: If this statement is false is it defamatory?

 The statute, Art. 5430 supra, defines libel and of course we do not look elsewhere for a definition. However we are concerned about applying a proper test to the publication to determine whether it is libelous. That is whether there is anything in it that tends to injure the reputation of appellant and which would expose him to public hatred, contempt or ridicule, or which tends to impeach his honesty, integrity, virtue or reputation.

We think the complained of statement admits of no ambiguity, and, because the evidence does not connect appellee with the alleged innuendoes, it becomes the duty of the court to determine its meaning. Guisti v. Galveston Tribune, 105 Tex. 497, 150 S.W. 874. In A. H. Belo & Co. v. Smith, 91 Tex. 225, 42 S.W. 850, 851, the court said:

"The question is: What effect would the publication have upon the mind of the ordinary reader? What construction would he have put upon it? For in defamatory language it is not so much the idea which the speaker or writer intends to convey as what he does in fact convey. It is the effect upon the character of the person alleged to be defamed by the utterance which the law considers, and therefore the utterer uses the language at his peril."

To our minds the most that can be read into the complained of statement is that appellant helped to push a gambling probe in El Paso which probe resulted from the affidavits made by Mrs. Johnson who had been convicted for the murder of her newborn child. We do not see any innuendo that appellant solicited false affidavits from Pearl Johnson or that he consorted with her on any basis. Also we do not think that saying appellant helped push the probe can be read that he secured false affidavits and "initiated" the probe. Further we think that the ordinary reader would expect information as to gambling payoffs to come from a person or persons of a class other than the elite.

We do not believe that a reading of the complained of statement by the ordinary reader would tend to expose appellant to *public* hatred, contempt or ridicule, or financial injury, or tend to impeach his honesty, integrity, virtue or reputation.

In the absence of the statement being defamatory in its nature even though it was false, as is alleged and testified to by appellant, it would not be libelous. Snider

v. Leatherwood, Tex.Civ.App., 49 S.W.2d 1107, er. dism.

It is our opinion that no genuine issue of fact as to any material matter is presented and for which reason the judgment of the trial court is affirmed.

Affirmed.