**SEARS, ROEBUCK AND COMPANY,
Appellant,**

**v.**

**Tom COKER, Appellee.**

**No. 4686.**

Court of Civil Appeals of Texas.

Waco.

May 9, 1968.

Rehearing Denied May 29, 1968.

OPINION

Jones, Boyd, Westbrook & Lovelace, L. Wayne Scott, Waco, for appellant.

Dunnam, Dunnam & Dunnam, Waco, for appellee.

WILSON, Justice.

Plaintiff recovered judgment against defendant for defamation, after a jury trial. He alleged defendant's managers had circulated among its employees a list of names without title or caption stating that it was a "hot check list"; that it was reasonably understood by the employees, and intended to be understood, that the persons named on the list "had knowingly given hot checks with intent to defraud, in violation of Art. 567b, Texas Penal Code", and had committed a crime; that the list included plaintiff's name; that defendant knew the imputation was false and made it with actual malice toward plaintiff.

Defendant answered, denying the imputation and malice, and alleged that plaintiff had previously given a check to another who had cashed it at defendant's store, but the check had been returned by the drawee bank for the reason the account of plaintiff had been closed; that defendant "had to contact plaintiff and request" that he pay the amount due on the check; that plaintiff at this time also had an installment account with defendant which was past due. Defendant plead truth; and privilege based on instructions to employees that the information was not to be further communicated, and that it was given to employees solely for defendant's protection in the operation of its business.

The jury found "that a managing agent of defendant verbally stated to one or more of its department heads that the untitled and uncaptioned list of names" was a "hot check list". A negative answer was returned, however, to issue No. 2 inquiring whether the verbal statement and the distribution of the list "would be understood by an ordinary person" to impute to plaintiff "a violation of the hot check law." A

"Yes" answer was given to a third issue: whether the jury found from a preponderance of the evidence defendant did "not have a good faith belief" plaintiff was "a violator of the hot check law." $1500 damages was found for injury to reputation and mental anguish. $1500 punitive damages was assessed.

The jury made negative answers to inquiries as to whether defendant placed Coker's name on the list "only for the purpose of advising its employees not to cash" his check "at a floor register", and as to whether defendant communicated information about the list to anyone not an employee.

It was found that plaintiff, himself, communicated the fact his name was on the list to others besides defendant's employees.

Plaintiff filed a motion to disregard the second finding to the effect that the verbal statement and list would not "be understood by an ordinary person to impute" to plaintiff "a violation of the hot check law". There is nothing in the record to show notice, hearing, presentation of, or action on this motion as required under Rule 301, Texas Rules of Civil Procedure. It is apparent, however, the finding was disregarded. The judgment recites, notwithstanding, that the court found "from its judicial knowledge and the undisputed evidence that the placing of a person's name on a list" designated a "hot check list" imports the violation of a criminal law, and that defendant's department heads reasonably so understood the list and verbal statement. Judgment was rendered for plaintiff for $3,000.

The controlling problems in this case concern the apparent disregarding of the finding of the jury in answer to the second issue, and the determination by the court that the verbal statement and list import "violation of the criminal law" under the undisputed evidence and judicial notice.

To justify the disregard of the "No" answer to the second issue as to whether the jury found from a preponderance of the evidence that the verbal statement and list "would be understood by an ordinary person to impute" a violation "of the hot check law", plaintiff first relies on the trial court's express finding that the recipient reasonably understood the matter published to import a crime.

There is no authority for the filing of findings of fact "where there has been a jury trial and a judgment non obstante veredicto has been entered." Fancher v. Caldwell, 159 Tex. 8, 314 S.W. 2d 820, 822. See Ditto v. Ditto Investment Co., 158 Tex. 104, 309 S.W.2d 219, 220. Thus if the court disregarded the second finding on plaintiff's motion, there was no authority to make the quoted finding. The court's power was limited to that granted by Rule 279, Texas Rules of Civil Procedure, where one necessarily referable issue of a multiple-issue independent ground of recovery has been submitted.

Plaintiff argues that the court was authorized by Rule 279 to make the finding because an element of his ground of recovery is that the recipient (not an "ordinary person") would reasonably understand the publication to import a crime; and that, although the court submitted the issue of whether "an ordinary person" would so understand it, there was no objection to failure to submit an issue as to the understanding of the actual recipient.

Whatever may be the rule in other jurisdictions, as urged by plaintiff, it is settled in Texas that if the meaning of words published is required to be ascertained by a jury, as is the case here, the proper test is that submitted by the court in the charge and found by the jury in this case. The test is: "What effect would the publication have upon the mind of the *ordinary* reader" or hearer. A. H. Belo & Co. v. Smith, 91 Tex. 221, 42 S.W. 850,

851; Guisti v. Galveston Tribune, 105 Tex. 497, 150 S.W. 874, 878, 152 S.W. 167; Express Pub. Co. v. Keeran, Tex.Com.App., 284 S.W. 913, 916, syl. 1; Moore v. Leverett, Tex.Com.App., 52 S.W.2d 252, 255, syl. 9; Southern Pub. Co. v. Foster, Tex.Com. App., 53 S.W.2d 1014; Great Atlantic & Pacific Tea Co. v. Harris, Tex.Civ.App., 75 S.W.2d 974, 975, writ dism.; Goodrich v. Reporter Pub. Co., Tex.Civ.App., 199 S. W.2d 228, 229, syl. 2, writ ref.; Koehler v. Sircovich, Tex.Civ.App., 269 S.W. 812, 817, syl. 7; Walker v. Globe-News Pub. Co., Tex.Civ.App., 395 S.W.2d 686, writ ref. n. r. e. As said in Cooley on Torts, 4th ed., Sec. 146, p. 503: "The question is, how would persons of ordinary intelligence understand the language." See Newell, Slander and Libel, (3rd ed.) Sec. 827, p. 834; Sec. 929, pp. 934, 935. There is nothing to indicate that the auditors or recipients would have any understanding differing materially from that of an "ordinary person".

Since no authorization exists for ignoring the jury finding or for substituting the court's finding on the ground the wrong test was employed in the submission, we examine the asserted basis that the "undisputed evidence" establishes the publication was so understood.

■ Plaintiff's witnesses on this issue were two of his fellow-employees whose employment had been terminated by defendant because they were competing with their employer in the sale of draperies. One of them testified he had never heard anyone connected with defendant's management accuse anyone on the list of a crime. Of the list he said, "It's just a list of people that gave insufficient checks to Sears." Another testified that his understanding was that the persons on the list "had given a check to Sears and it had on it 'insufficient funds' or other reasons on it"; that it was "a check list; insufficient money to pay checks." These witnesses testified that plaintiff himself informed them his name was on the list, and this

was how they discovered that fact. We actually find no evidence that any person understood the list, coupled with the verbal statement, as imputing a violation of criminal law. The finding made by the court in the judgment certainly does not rest on undisputed evidence. The jury finding is clearly not contrary to the undisputed evidence, and may not be disregarded on this ground.

Finally appellee seeks to sustain the judgment on the theory the court took "judicial notice" of the fact that the verbal statement (that the list was a "hot check list") imputed commission of a crime to plaintiff. If this was a proper matter of "judicial notice" there was no necessity for a jury finding or for the contrary finding by the court. The statement would thereby have been slanderous per se.

■ But it was not. If the meaning of language "is ambiguous and of doubtful import", said the Supreme Court in Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 878, "the proper practice was to submit the question to the jury, which was done. Under such circumstances, it was not proper for the court to dispose of the matter by determining what was the reasonable and natural meaning of the statement."

■ Art. 567b, Texas Penal Code, defines the crime which it is said the court judicially knows is charged to have been violated by plaintiff in the use of the words "hot check list". It includes elements of drawing a check "with *intent to defraud*" and *knowledge* that the drawer "has not sufficient funds" in the bank for payment of such check and all others outstanding. The drawing of the check is not prima facie evidence of intent to defraud and knowledge unless the amount is not paid to the holder within ten days after notice. Intent to defraud is not established by the mere fact a check is returned by the bank marked "insufficient funds". Intent

is essential to constitute the crime. Colin v. State, 145 Cr.R. 371, 168 S.W.2d 500; Burleson v. State, Tex.Cr.App., 403 S.W.2d 143.

 In concluding that the court judicially knew that including plaintiff's name on a "hot check" list imported commission of a crime the court apparently relied on language in Elder v. Evatt, Tex.Civ.App., 154 S.W.2d 684, no writ. The language in that case is not authoritative, and does not control here. It was a plea of privilege appeal, of which the Supreme Court does not ordinarily have jurisdiction. It contained dictum which was confined to common knowledge of the meaning of language "in this section of the country", where it was said it imports violation of criminal law.

We are not familiar with any such "generally understood meaning". Such terms as "rubber check", "cold check" and "hot check" are slang words commonly used in the vernacular as colloquialisms or provincialisms to denote checks returned for "insufficient funds", or because the drawer's bank account is temporarily inadvertently depleted; and they do not necessarily, inexorably or unquestionably imply fraudulent intent so as to import criminal violation.

The language in Elder v. Evatt relied upon, however, was not necessary to the decision in that case, for the court held that the context, containing additional words constituting a threat to send the maker "to the pen" or "over the road" was sufficient to support a finding defendant had made a charge of crime so as to constitute sufficient evidence of a venue fact.

The very check which plaintiff gave, which was returned to defendant in the instant case, and which plaintiff redeemed by payment of cash to defendant, could have been understood by the ordinary person (as was found to be understood by the jury) to be a "hot check". The meaning of the words when applied to the list on which his name appeared was a question for the jury.

The third finding to the effect that defendant had no good faith belief that plaintiff had not violated the law is immaterial. The finding could only be applicable to the non-existent questions of exemplary damages and privilege.

It is not necessary to pass on appellant's other points. Appellee's cross-points are overruled. The judgment is reversed and here rendered on the verdict that plaintiff take nothing.

McDONALD, C. J., not participating.