**Aaron ROSE, et al., Appellants,**

v.

**The ENTERPRISE COMPANY, Appellee.**

**No. 8641.**

Court of Civil Appeals of Texas, Beaumont.

May 14, 1981.

Rehearing Denied June 25, 1981.

Ned Johnson, Beaumont, for appellants.

Chilton O'Brien, Beaumont, for appellee.

KEITH, Justice.

Four plaintiffs, Aaron Rose, Felix Burris, C. C. Moss, and Russell Adkins, appeal from

1. Raymond Lefkowitz, Richard Austin Oliver, Larry Paris Powell, and Walter Batiste, the individuals indicted, were named in the two articles upon which the suit is based.

2. The Enterprise article contained this introductory material:
"The indictments allege Lefkowitz took bets from Sander Knight and Andrew Diamond on Nov. 14; Oliver, from George D.

an order granting a summary judgment to the defendant below in their action for libel. We reverse and remand for a trial on the merits.

The defendant is the owner and publisher of two daily newspapers in Beaumont, the Enterprise being a morning paper while the Journal is published in the afternoon. Each paper has a large circulation in the city and adjacent areas, with that of the Enterprise being more extensive and widespread. The four plaintiffs are citizens of Beaumont, and each has lived in the area for several years.

Four individuals [1] were indicted by the grand jury of Jefferson County for gambling, the indictments having been returned on December 6, 1979. Defendant published in its newspapers of December 7 the details of the indictments. The publications charged that the four accused persons were indicted on one or more counts of gambling promotion or keeping a gambling place, and then detailed the names of the persons from whom the accused persons accepted bets.[2] Following the introductory material quoted in the preceding footnote, this language was published in the Enterprise, forming the basis of the complaint:

"All but Batiste were also charged with running a gambling operation at Unit 405 of the Ridgewood Garden Apartments."

The Journal article, written by the same reporter who prepared the Enterprise article, was headlined: "4 indicted as probe of gambling grows." While in different language, the substance of the article was the same as had appeared in the morning paper. The language complained of in this article read:

Garabodian on Nov. 4, Night on Nov. 10, George Dishman and Felix Burris on Nov. 18; Powell, from Night, Dishman, Burris, Diamond and Carl Moss, all on Nov. 18; and Batiste, from Larry Wiley, *Aaron Rose, Russell Adkins,* Gary Carter, Clarence Lartigue, *Burris* and *Moss,* all on Oct. 14."

NOTE: The names of the plaintiffs are italicized in the foregoing quotation.

"Batiste, a chef, was indicted seven times, the largest number of gambling indictments returned against any of the four. He is charged with gambling promotion with Larry Wiley, Aaron Rose, Russell Adkins, Gary Carter, Clarence Lartigue, Burris and Moss, all on Oct. 14."

Finally, after plaintiff Rose had complained of the publications, a "clarification" of the earlier articles was published in the Journal of December 8, headlined: "11 men face no criminal charges." The article recited the return of the indictments against the four men named in footnote 1, noted that the "men who placed the bets have appeared as witnesses" and "cooperated in the investigation." The article concluded:

"There are no criminal charges being lodged against the witnesses whose names appeared in the indictments against the four Beaumonters. The witnesses were [here follow the names of the persons as set out in footnote 2, including our four named appellants]."

Plaintiffs alleged that the articles in the newspapers heretofore quoted contained untrue and libelous statements which could, in the minds of the ordinary reader, "impute to each of the Plaintiffs, specifically, a commission of a crime, to-wit: running a gambling operation."[3] This was followed by an allegation that the statements "were not a fair, true and impartial account of any proceeding"; consequently, defendant was not entitled to interpose the defense of privilege as set out in *Tex.Rev.Civ.Stat. Ann. Art. 5432 (1958).* Each of the plaintiffs sought substantial damages.

Extensive pre-trial depositions are in our record including testimony of the reporter, several editors of the newspapers as well as executives of the defendant. It is not disputed that the several plaintiffs did engage in gambling as that term is defined in *Tex. Penal Code Ann. § 47.02,* had given testimony before the grand jury, and had received testimonial immunity under *Tex.Penal Code Ann. § 47.09.* Nor is it contended by defendant that any plaintiff was a "public figure". See *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 814–815 (Tex.1976).

Defendant had adequate pleadings to support the defenses it interposed in its motion for summary judgment:

"... that the newspaper articles complained of were substantially true, which is a complete defense to Plaintiffs' [cause of] action, as provided in Article 5431 of the Revised Civil Statutes of the State of Texas, and were privileged under the provisions of Article 5432 of the Revised Civil Statutes of the State of Texas."

Plaintiffs traversed the defendant's contentions by pointing to the particular portions of the depositions of defendant's reporter, editors, and publisher wherein one or more of such employees testified in effect that the articles were ambiguous. From this premise, plaintiffs asserted in their reply to defendant's motion that there was a question of fact for jury determination.

The trial court sustained the motion for summary judgment concluding as a matter of law that the articles "were substantially true." A take nothing judgment was entered and plaintiffs now appeal upon two points of error contending that there were genuine fact issues as to each article.

We consider it appropriate, at the outset of our discussion, to put some of the well-established rules of law governing this appeal into proper perspective.

Both the reasons for the summary judgment and the objections to it were in writing and before the trial judge at the hearing. Thus, the parties complied with *Tex.R. Civ.P. 166-A* as interpreted in *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 677 (Tex.1979).

\* \* \* \* \* \*

(2) receives, records, or forwards a bet [defined in *§ 47.01(1), Penal Code*] or offer to bet." Under *§ 47.03(b)* an offense under the foregoing section is a felony of the third degree.

---

**3.** The article states that the persons indicted were charged with gambling promotion. "Gambling Promotion" is defined in *Tex.Penal Code Ann. § 47.03(a)(2) (1974)*: "(a) A person commits an offense if he intentionally or knowingly does any of the following acts:

■ The moving defendant was required to establish its right to the summary judgment by conclusively proving all essential elements of its defense as a matter of law. *Clear Creek*, supra. "The function of the summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952)." *Clear Creek*, supra (589 S.W.2d at 678, fn. 5).

■ A motion for summary judgment must be denied if there is any genuine issue of material fact. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Town North National Bank v. Broaddus*, 569 S.W.2d 489, 494 (Tex.1978). All doubts as to the existence of a material fact are to be resolved against the movant and the evidence must be viewed in the light most favorable to the non-movant. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965); *Poe v. San Antonio Express-News Corp.*, 590 S.W.2d 537, 538–539 (Tex.Civ. App.—San Antonio 1979, writ ref'd n.r.e.).

Plaintiffs do not contend that either of the published articles charged specifically that they had been indicted for any offense. Instead, plaintiffs contend that the articles were ambiguous and whether or not either article was actionable was a fact question for the jury. More than eighty years ago, the Supreme Court announced the rule which still prevails, saying in *Cotulla v. Kerr*, 74 Tex. 89, 11 S.W. 1058, 1059 (1889):

"In the absence of doubt or ambiguity growing out of the language used in the publication, we understand it to be the duty of the court to determine and instruct the jury whether or not it is libelous; but, where there is uncertainty or doubt, it is the duty of the court to give the jury a definition of what is a libel, and leave it for the jury to say whether the offense has been proved."

This rule was recognized and followed in *Guisti v. Galveston Tribune*, 105 Tex. 497, 150 S.W. 874, 876 (1912). *Guisti* also recognized another rule of equal importance and applicability to our case which was laid down by Judge Gaines in *A. H. Belo & Co. v. Smith*, 91 Tex. 221, 42 S.W. 850, 851 (1897):

"The question is: What effect would the publication have upon the mind of the ordinary reader? What construction would he have put upon it? For in defamatory language it is not so much the idea which the speaker or writer intends to convey as what he does in fact convey."

Many cases making application of the "ordinary reader" test are cited in *Sears, Roebuck & Co. v. Coker*, 428 S.W.2d 710, 712–713 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.). See also, *Houston Belt & Terminal Railway Co. v. Wherry*, 548 S.W.2d 743, 748 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.).

Finally, both rules—an ambiguous statement presents a jury question [*Cotulla v. Kerr*, supra] and the "ordinary reader" interpretation—were recognized and applied by our Supreme Court in *Denton Publishing Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex.1970), where additional authorities are collated supporting each rule.

Having listed the authorities supporting plaintiffs' contentions, we turn now to those urged by the defendant in support of the judgment below. Of course, primary reliance is placed upon Tex.Rev.Civ.Stat. Ann. Art. 5432 providing that a "fair, true and impartial account of the proceedings in a court of justice" shall not be made the basis of any action for libel. We note in passing that all parties agree that the two articles related to proceedings in a court of justice.

■ The parties are in accord that if the articles are in fact literally true and not ambiguous so as to be subject to the rules laid down in *Cotulla v. Kerr* and *Belo v. Smith*, supra, there is no liability under the statute noted above.

However, defendant urges two alternate contentions: *First*, if the articles were not literally true, they were substantially true, urging upon us the contentions supported

by the authorities cited in *Shihab v. Express-News Corp.*, 604 S.W.2d 204, 206–208 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.).[4]

*Second*, the words used in the publication must be construed as a whole, giving to all the words contained therein their ordinary meaning as read and construed by persons of ordinary intelligence. *Southern Publishing Company v. Foster*, 53 S.W.2d 1014, 1016 (Comm'n App. 1932, judgment adopted); *Taylor v. Houston Chronicle Publishing Co.*, 473 S.W.2d 550, 554 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.).

*Next*, defendant argues that since the articles were unambiguous and the facts surrounding the publication were undisputed, the question of whether or not the publication is privileged is one of law for the Court to decide. *Christy v. Stauffer Publications, Inc.*, 437 S.W.2d 814, 815 (Tex.1969), is relied upon. Defendant's contention is well founded in theory; the difficulty lies in its major premise—the articles were unambiguous.

In conclusion, the defendant argues that the plaintiffs admitted placing bets and, but for the claimed testimonial immunity, "they could have been indicated and convicted of gambling."[5] Consequently, it is argued, plaintiffs suffered neither a legal harm nor were they "deprived of anything that they were legally or morally entitled to."

Because we remand the case for trial on the merits, it is inappropriate to discuss in detail the factual issues presented by the record. It is sufficient to state that several of defendant's editors and executives testified that the articles in question were poorly worded and could be misconstrued by the man on the street to the effect that the plaintiffs had been charged with gambling promotion.

On December 8, defendant published a "clarification" article after receiving a complaint from plaintiff Rose. Publisher Cromwell testified that the primary factor motivating the publication of the "clarification" was that the earlier articles "could have been misconstrued that Mr. Rose and the other Plaintiffs in this lawsuit were indicted for gambling promotion."

We have given careful consideration to the authorities submitted by the defendant, including those in its comprehensive post-submission brief. From our review of the entire proceedings under the recognized standards, we are of the opinion that there were fact issues presented for determination by a jury. Consequently, the judgment of the trial court is reversed and the cause is remanded for a conventional trial on the merits.

Reversed and Remanded.

---

4. Plaintiffs respond by referring to *Express Publishing Co. v. Gonzalez*, 350 S.W.2d 589, 592 (Tex.Civ.App.—Eastland 1961, writ ref'd n.r.e.), wherein the Court said: "A statement is not true or even substantially true if, by implication, an entirely untrue impression is made by omission of part of the facts."

5. Our record does not support defendant's implied conclusion that the plaintiffs could have been indicted and convicted of gambling promotion (*Penal Code § 47.03*), although the plaintiffs did engage in gambling as defined in Penal Code § 47.02, a Class C. Misdemeanor.