Jessie L. KEMP et al., Appellants,

v.

H. B. HARRISON et al., Appellees.

No. 96.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Sept. 4, 1968.

Rehearing Denied Oct. 2, 1968.

Jim S. Phelps, Phelps, Kilgarlin & Snell, Houston, for appellants.

J. Curtiss Brown, W. James Kronzer, Brown, Kronzer, Abraham, Watkins & Steely, C. M. Hudspeth, DeLange, Hudspeth, Pitman & Katz, Brantly Harris, Butler, Binion, Rice, Cook & Knapp, W. Douglas Matthews, Carroll, Matthews & Willatt, Houston, John S. Kiibler, Jr., Kiibler & Kiibler, LaPorte, for appellees.

TUNKS, Chief Justice.

On June 19, 1952, Frank W. Reynolds, died intestate. He was, at the time of his death, and had been for many years, a resident of LaPorte, Texas. He had never been married and none of his neighbors knew either the identity or the location of any of his heirs. He had been engaged in the real estate business both as a licensed dealer and as an invester. At the time of his death he owned more than 500 tracts of real property, most of the tracts being city lots located in and around LaPorte. None of the realty was improved except his residence.

Soon after Reynolds' death a number of his neighbors and friends met to discuss the handling of the affairs of his estate. In the group was H. B. Harrison who also was a real estate dealer and who had for a long period of time known Reynolds both as a personal friend and as a fellow real estate dealer. It was decided that Harrison and another friend, Mrs. Jessie Stille, should look after the matter. Harrison and Mrs. Stille then made application for appointment, and were appointed as temporary co-administrators of Reynolds' estate by the Probate Court of Harris County, Texas, on June 30, 1952.

In August, 1952, Harrison located one of the Reynolds' nephews in Bushnell, Illinois. Through him the other heirs to the estate, all being nieces and nephews, were located. A conference in Bushnell was arranged. At that conference, Harrison told the heirs the general nature of the estate and got from them written authority to act as administrator of the estate. In searching through Reynolds' papers, Harrison had found a list made by Reynolds of property he owned and the valuations thereof. Harrison showed the heirs that list at the Bushnell meeting. The list itself was not attached to any of the depositions taken or affidavits given nor otherwise exhibited in the trial court. The testimony as to the valuation shown on it is not consistent, varying from about $160,000.00 to about $230,000.00. Harrison, however, at the Bushnell meeting, told the heirs that the valuation was too high and that the estate was worth from $90,000.00 to $100,000.00. There was, in addition to the real property, cash belonging to the estate in the amount of approximately $5,000.00.

Soon after the Bushnell conference the heirs employed an attorney in Chicago, Illinois, to represent them. That attorney advised them to revoke the power of attorney they had given Harrison authorizing him to act as administrator. They did so. The Chicago attorney contacted a Houston attorney to handle the matter locally and referred the case to him. Later, in Septem-

ber, 1952, Mrs. Jessie L. Kemp, one of the heirs, and her husband came to Houston to confer with the local attorney. Pursuant to that conference the Kemps, acting for all of the heirs, confirmed the employment of the Houston attorney to represent them in their claim to the estate. From that time on, all of the communications between the Houston attorney and the heirs were through the Chicago attorney.

The local attorney, after some investigation, recommended that Harrison be made permanent administrator. That recommendation was accepted and on November 26, 1952, Harrison was so appointed. Mrs. Stille, at her request, was dismissed as temporary administrator.

On February 10, 1953, an inventory and appraisement was filed showing the value of the real estate at about $97,000.00. There is some evidence that a court-appointed appraiser told Harrison that he would make a bid on the property if it was to be sold.

In the correspondence between the heirs' Houston attorney and their Chicago attorney, there was discussion as to the disposition to be made of the property. There was discussion as to whether it would be all sold in one sale, or whether it should be sold piecemeal and as to whether bids should be sought through advertising. The heirs evidenced a desire to liquidate and distribute the estate quickly. It was decided, pursuant to correspondence between the Houston and Chicago attorneys for the heirs, that they should seek bids on all of the property in one sale without incurring any advertising expense. The Houston attorney told Harrison of this decision.

Several individuals approached Harrison to discuss purchase of some individual pieces of property. Harrison told them that all the property was to be sold at once. Some of these inquiries were referred to the heirs' Houston attorney. There were some tentative bids made for all of the property but the record is not clear as to the amount of those bids. There is no evi-

dence that the court-appointed appraiser who had said he wanted to bid on the property ever did so, nor is there any explanation as to why he did not.

Early in the summer of 1953, Harrison called his brother-in-law in Dallas, Texas, Mr. H. J. Yarborough, to tell him about the property and suggest that he consider buying it. Yarborough went to LaPorte and was shown the property by Harrison. He was interested in some of the tracts, but on being told that it all had to be sold at once, he did not make any offer. Later, Yarborough, taking with him a Dallas real estate man, again went to look at part of the property. Still later, Yarborough employed a Dallas real estate appraiser to go to LaPorte and appraise the property. That appraiser told Yarborough that the property was worth from $70,000.00 to $75,-000.00. Yarborough made an offer to buy it for $74,800.00 (later this price was decreased by $2,000.00 because of defects in the titles to some of the tracts). The heirs' Houston attorney told the Chicago attorney of this offer by letter dated June 24, 1953, saying, "This is the best offer that has been made to date and the writer is of the opinion that it should be taken." On August 3, 1953, the Chicago attorney, after having consulted with the heirs, informed the Houston attorney that the heirs had accepted the offer and instructed that deeds to effect the sale be prepared and sent to Chicago for execution. The Probate Court of Harris County then, on application of the administrator Harrison, ordered the property sold. The administrator's sale was confirmed on March 10, 1954. The heirs also executed a special warranty deed to Yarborough which deed was dated April 1, 1954. Of the $72,800.00 paid to the estate by Yarborough, about $18,000.00 was used to pay back taxes owed on the property. Other claims and expenses of administration amounting to about $12,000.00 were paid and the balance distributed to the heirs. In December, 1954, the estate was closed.

In 1958, the heirs of Frank W. Reynolds filed suit in the nature of a Bill of Review in the Probate Court of Harris County, Texas, seeking to set aside the order of that court confirming the administrator's sale to Yarborough and to cancel the deed. The heirs' present attorneys explain that this procedure was followed to avoid possible restrictions of an indirect attack on the order of confirmation. This case was tried in the Probate Court in December, 1966, and resulted in a judgment in favor of the defendants. The heirs appealed and that case is still pending in the 125th District Court of Harris County, Texas.

On March 3, 1958, the heirs, Jessie L. Kemp and her husband, R. M. Kemp, Sylvia L. Gronewald and husband, David Gronewald, James A. Parks, Richard B. Kirtley and Benjamin H. Kirtley, filed suit in the 152nd District Court of Harris County, Texas, seeking a concellation of the special warranty deed dated April 1, 1954, by which they conveyed their interest in the Reynolds property to Yarborough and for an accounting of funds received, from sales or otherwise. This case was subsequently transferred to the 164th District Court of Harris County, Texas. The heirs named as defendants Yarborough, Harrison, the surety on Harrison's administrator's bond and a number of purchasers who had bought parts of the property from Yarborough. There were a total of 58 defendants.

The principal basis of the heirs' claim that their special warranty deed should be cancelled is in the allegation that Harrison, Yarborough and others conspired to cause them to sell the property for less than it was worth. They also alleged that procuring the deed to Yarborough was a subterfuge whereby Harrison, himself, acquired the beneficial ownership of the property. They further allege that the administrator's sale was unlawful because there was no necessity for sale of all of the property to pay the debts owed by the estate.

■ The heirs made a motion to consolidate this case with the case pending in the 125th District Court representing

their appeal from the adverse judgment in the Probate Court. The trial court refused to order the consolidation and one of appellants' points of error is directed at that action. We overrule the point of error. The ruling of the trial court on the matter of consolidation of causes is one in which the broadest of discretion is indulged. Such ruling will be held error only if there is an abuse of that broad discretion. Womack v. Berry, 156 Tex. 44, 291 S.W.2d 677; McKinney v. Gaiser, Tex.Civ.App., 366 S.W.2d 268, ref., n. r. e.

Some of the defendants, including Harrison and Yarborough, made a motion for summary judgment based on supporting affidavits and facts shown in the depositions that had been taken. The trial court granted summary judgment. That part of the suit relating to the defendants in whose favor judgment was rendered was severed so as to create a final judgment from which appeal could be taken. The heirs have so appealed. We affirm the judgment of the trial court.

■ Despite the volume of the pleadings, affidavits and depositions presented to the trial court, the basic facts are rather simple and clearly identified. The existence of the brother-in-law relationship between Harrison and Yarborough was admitted. This fact standing alone, does not, however, establish the existence of a conspiracy between them. Ramos v. Rodriguez, Tex.Civ.App., 304 S.W.2d 274, writ ref. Furthermore, it is established by the affidavit of the heirs' Houston attorney that he was told of the relationship by Harrison. In his affidavit he also said that he told the Chicago lawyer of the relationship. This, however, is denied by the Chicago lawyer in his deposition. All of the heirs also testified by deposition that they did not know of the relationship. We must assume, therefore, this being an appeal from a summary judgment, that the Houston attorney did not tell either the Chicago attorney or the heirs that the sale of the property was being made to the administrator's brother-in-law and that the heirs did not have actual knowledge of such fact. The knowledge of their attorney, however, is imputed to them so that they had constructive notice. Texas Quarries, Inc. v. Pierce, Tex.Civ. App., 244 S.W.2d 571.

■ There is no evidence even suggesting that the Houston attorney himself was a conspirator against his clients. If he had been, of course, his knowledge would not have been imputed to the heirs. The attorney was not made a party defendant although this case had been pending for almost ten years, depositions of all of the parties had been taken, trial had been had in the Probate Court of the companion case wherein the same issue would have been relevant and the case had otherwise been thoroughly investigated by the heirs' present attorneys. It was not until the hearing was being had on the appellees' motion for summary judgment that it was first suggested that the heirs' former attorney had participated in a conspiracy against them. During the course of the hearing on the motion for summary judgment, the plaintiffs' attorney undertook to file an amendment to his affidavit, charging that the heirs' former attorney had conspired against them. The trial court refused to permit the filing of the tardy affidavit and was, under the circumstances, amply justified in doing so. McCormick v. Stowe Lumber Co., Tex.Civ.App., 356 S.W. 2d 450, writ ref., n. r. e. Rule 166–A, paragraph (c) of the Texas Rules of Civil Procedure, provides that "The adverse party *prior to the day of hearing* may serve opposing affidavits." (Emphasis added). The amendment tendered by the appellants was not one merely correcting a formal defect in a timely filed affidavit, it was an effort to raise for the first time a vital issue after the hearing had begun. The trial judge was acting well within the limits of his discretion in refusing to permit the affidavit to be filed.

■ The record does not suggest that the price at which the property was sold was evidence of a conspiracy to sell it for less than it was worth. It is true that a

paper was found among the effects of the decedent which was treated by the parties as reciting his evaluation of the properties. This paper, however, was never placed in evidence. Its admissibility as evidence of value is questionable and certainly oral testimony as to its contents was inadmissible. McCormick & Ray, Texas Law of Evidence, 2d Ed., Vol. 2, Sec. 1563, p. 402. Furthermore, this document was not concealed from the heirs and they, knowing of its contents, agreed to the sale that was made. Also there was evidence of Harrison's statement to the heirs at the Bushnell, Illinois conference to the effect that the property was worth $90,000.00 to $100,000.00 and there was the appraisement filed in the Probate Court fixing the value at $97,000.00. These facts, too, were known to the heirs when they approved the sale that was made. The heirs, being anxious to hasten the liquidation and distribution of the estate, made the determination to sell all of the property at once. That would naturally result in a sale price that was less than the total of the valuations placed on each of the individual tracts. The agreement to sell was not made until more than a year after Reynolds' death, and Yarborough's bid was, according to the affidavit of the heirs' Houston attorney, at least $10,000.00 more than any other bid made.

It is true that a conspiracy may, and often must be, proved by circumstantial evidence. But the rule of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, requiring that evidence be of such probative force to raise more than a mere surmise or suspicion of the existence of a fact to constitute "any evidence" of that fact, applies in conspiracy cases as well as in other cases. Waco Drug Co. v. Hensley (Tex.Com.App.), 34 S.W.2d 832; Gager v. Reeves, Tex.Civ.App., 235 S.W.2d 688, ref., n. r. e.; Caufield v. El Paso Times, Inc., Tex.Civ.App., 280 S.W.2d 766, no writ hist.; Terrell v. Olsen, Tex.Civ.App., 378 S.W.2d 719, no writ hist.

What we have said with reference to the appellants' contention that there was evidence of a conspiracy to defraud them by selling the property involved for less than it was worth, is largely applicable to their allegations that Harrison and Yarborough conspired to place the real ownership of the property in the administrator, Harrison. There is no evidence that Harrison ever acquired any ownership of the property. He did participate in some of the transactions in which Yarborough sold some of the property. Such participation does not suggest his ownership of the property. He was a licensed dealer who resided where the property was located. It is natural that the owner, his brother-in-law who lived in Dallas, would use his services in making the sales.

It is true that the appellants were not paid a separate consideration for the execution of the special warranty deed, but the $72,800.00 which Yarborough paid to the estate was in consideration for the property itself. The mechanics by which the title was transferred to him was in the execution of both an administrator's deed and a special warranty deed from the heirs to him. In fact, it was the heirs' Chicago attorney himself who suggested that deeds be prepared and sent to Chicago for execution by the heirs. The money which Yarborough paid to the estate was, after payment of claims and expenses, divided among and accepted by the heirs. They thus received consideration for their special warranty deed. Furthermore, their acceptance of the proceeds of the sale of the property estops them from asserting that the administrator's deed was void or voidable because there was no necessity to sell the property. Allen v. Berkmier, Tex.Civ.App., 216 S.W. 647, writ ref.; Witaker v. Thayer, 38 Tex. Civ.App. 537, 86 S.W. 364, no writ hist.

The record reflects that some of the defendants did not file timely answers and default judgments were taken against them. Those judgments, however, were interlocutory in character because of the pendency of the suit against other defendants. Rule 240, T.R.C.P. When the trial court rendered its final judgment

those defendants were included and judgment rendered for them. This had the effect of setting aside the default judgments earlier entered against them. This was within the authority of the trial court and his action in that respect was not error. Prince v. Peurifoy, Tex.Civ.App., 396 S.W. 2d 913.

We are of the opinion that no reversible error was committed by the trial court. The judgment of the trial court is affirmed.

Affirmed.