TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00375-CV






Robert J. Poth and Poth Corporation, Appellants



v.



Small, Craig & Werkenthin, L.L.P., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 93-14336, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING 






 Appellants Robert J. Poth and Poth Corporation (the "Corporation") sued Small, Craig
& Werkenthin, L.L.P. ("SCW"), appellee, alleging legal malpractice. The trial court granted summary
judgment for SCW. Appellants assert five complaints in their two points of error. We will affirm the trial
court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 The Corporation was a construction company established in the early 1970s with Poth as
president and sole shareholder. A major portion of the Corporation's construction business involved
projects of a real estate partnership formed by Ben Templeton, Todd Templeton, and Poth. The
Templetons became involved in the Corporation as well, such as in 1978 when they co-signed a Master
Surety Agreement between the Corporation and United States Fidelity and Guaranty Company in order
to increase the Corporation's bonding capacity.

 In 1981 the Corporation was awarded a million-dollar construction contract to build a new
junior high school in Marble Falls, Texas. Later that year problems arose with the project. Before the
building was complete, heavy rainfall caused it to develop cracking throughout its structure. When the
Marble Falls Independent School District withheld payment of the final $300,000, the Corporation
experienced extreme cash-flow problems.

 In January 1982, SCW attorneys, acting on behalf of the Templetons, prepared written
agreements the effect of which was to transfer control of the Corporation to the Templetons in exchange
for their agreement to fund the short-term expenses of the Corporation, including anticipated litigation
expenses relating to the Marble Falls project. As a part of this transfer, Poth signed a Voting Trust
Agreement in which the Templetons became trustees of Poth's voting rights as sole shareholder of the
Corporation. Furthermore, Poth, as president of the Corporation, granted the Templetons a general power
of attorney on behalf of the Corporation. Finally, the agreements included a provision that the law firm of
Carrington & Coleman would represent the Corporation in the Marble Falls litigation and that any change
of counsel had to be approved by Poth. Despite this, the Templetons retained SCW to monitor the Marble
Falls litigation and to assist the Corporation's previously retained counsel. SCW ultimately billed the
Corporation approximately $400,000 for its work on that case.

 The Marble Falls litigation was settled in 1985. Under the settlement, the Templetons
received a certain amount of money from the project's architect and engineer, but paid out an even larger
amount pursuant to the master surety agreement they had co-signed and the settlement documents. In 1987
the Templetons sued Poth for the shortfall between the funds received from the architect and engineer and
funds paid out to settle the litigation. In 1991, Poth asserts, he discovered for the first time that SCW had
represented and billed the Corporation in connection with the Marble Falls litigation. The present lawsuit
was filed in 1993.

 SCW moved for summary judgment on five grounds: (1) there was no privity of contract
between SCW and Poth individually because SCW never represented Poth; (2) all claims were barred by
limitations; (3) the Corporation's claims were barred by estoppel; (4) the Corporation suffered no damages
from SCW's failure to pursue coverage under an existing insurance policy; and (5) SCW's representation
of multiple defendants in the Marble Falls litigation did not create a conflict of interest. The trial court's
order granting SCW's motion for summary judgment was not based on any specific ground stated in the
motion. Appellants' motion for new trial was overruled by operation of law.

 Appellants assert five grounds in support of their points of error: (1) lack of privity does
not bar Poth's individual claims against SCW, (2) the statute of limitations does not bar appellants' claims,
(3) estoppel does not bar appellants' claims, (4) the summary judgment proof demonstrates that appellants
were damaged by SCW's negligence, and (5) there was a blatant conflict of interest involved.


DISCUSSION

 In point of error one, appellants assert that the trial court erred in granting SCW's motion
for summary judgment. We review a summary judgment using the following standards: (1) the movant for
summary judgment has the burden to show there is no genuine issue of material fact in existence, (2)
evidence favorable to the nonmovant will be taken as true, and (3) every reasonable inference must be
indulged in favor of the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). "When a trial court's order granting summary
judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed
on appeal if any of the theories advanced are meritorious." Rogers v. Ricane Enters., Inc., 772 S.W.2d
76, 79 (Tex. 1989).

 In point of error two, appellants assert that the trial court erred in denying their motion for
new trial. In reviewing the overruling of a motion for new trial, an appellate court will not disturb the trial
court's decision absent a showing of a manifest abuse of discretion. Champion Int'l Corp. v. Twelfth
Court of Appeals, 762 S.W.2d 898, 899 (Tex. 1988).


I. Claims by Poth Individually

 Although the Corporation was represented by SCW, Poth, individually, was not the firm's
client. In general, an attorney owes a duty of care to her client, but not to third parties who may have been
damaged by the attorney's negligent representation of the client. Barcelo v. Elliot, 923 S.W.2d 575, 577
(Tex. 1996).

 Nonetheless, appellants assert in their two points of error that lack of privity of contract
does not bar Poth's individual claims against SCW. Appellants argue that SCW's representation was
acquired by the Templetons under the Voting Trust Agreement and that the Templetons, as trustees of the
Voting Trust, served as Poth's agents, thereby creating privity of contract between SCW and Poth. (1) Texas
courts have not applied privity in that manner. For purposes of determining who holds the attorney-client
privilege, a trustee who retains an attorney to advise her in administering a trust is the real client of that
attorney, not the trust beneficiaries. See Huie v. DeShazo, 922 S.W.2d 920, 925 (Tex. 1996). While the
Texas Supreme Court has expressed no opinion as to whether the beneficiary of a trust has standing to sue
an attorney representing the trustee for malpractice, Barcelo, 923 S.W.2d at 579 n.2, at least one court
of appeals has held that a trust beneficiary lacks standing to sue the trustee's attorney. See Thompson v.
Vinson & Elkins, 859 S.W.2d 617, 623-24 (Tex. App.--Houston [1st Dist.] 1993, writ denied).

 The supreme court has stated that "the greater good is served by preserving a bright-line
privity rule which denies a cause of action to all beneficiaries whom the attorney did not represent. This
will ensure that attorneys may in all cases zealously represent their clients without threat of suit from third
parties compromising that representation." Barcelo, 923 S.W.2d at 578-79. This rationale supports the
application of privity as a bar to Poth's individual claims. Furthermore, appellant points to no Texas case
finding privity between a trust beneficiary and the trustee's attorney. (2) We hold that lack of privity bars
Poth's individual claims against SCW for legal malpractice.


II. Claims by the Corporation

 Appellants also assert that the statute of limitations does not bar their claim for legal
malpractice. The statute of limitations involved here is two years. See Tex. Civ. Prac. & Rem. Code Ann.
§ 16.003(a) (West 1986); Willis v. Maverick, 760 S.W.2d 642, 644 (Tex. 1988). All the events that
gave rise to their claims apparently occurred no later than November 1987. Because the lawsuit was filed
in 1993, such claims would ordinarily be barred by limitations. However, there are exceptions to the statute
of limitations.

 Limitations may be tolled in cases of concealment or fraud (3) and in cases to which the
discovery rule applies. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455-56 (Tex.
1994). The discovery rule applies when the nature of the injury is inherently undiscoverable and the
evidence of the injury is objectively verifiable. Id. at 456. However, in the fiduciary context, the nature
of the injury may be presumed to be inherently undiscoverable although a person owed the duty has some
responsibility to ascertain when an injury occurs. Id.

 To overcome the limitations bar, appellants assert that the facts establishing the elements
of the Corporation's claims were inherently undiscoverable, thus making the discovery rule applicable. (4) 
A wrong or injury is inherently undiscoverable if it is by nature unlikely to be discovered within the
prescribed limitations period despite due diligence. S.V. v. R.V., 933 S.W.2d 1, 7 (Tex. 1996). The
element of "inherently undiscoverable" (along with "objectively verifiable") helps to balance the benefits of
precluding stale claims against the risk of precluding meritorious claims that happen to fall outside an
arbitrarily set time limitation. Id. at 6. To be inherently undiscoverable does not require absolute
impossibility of discovery, nor does it mean the plaintiff merely did not discover the wrong or injury within
the allotted time; rather, it is dependent on the nature of the wrong or injury, the circumstances in which it
occurred, and the plaintiff's diligence. Id. at 7.

 Appellants assert that the inherently undiscoverable facts for which limitations should be
tolled here are: (1) SCW represented the Corporation in violation of the Agreements, (2) SCW billed the
Corporation more than $400,000 for services rendered to the Corporation in violation of the Agreements,
and (3) SCW failed to submit claims under the Crum & Forster ("Crum") insurance policies for the Marble
Falls litigation.

 In examining the circumstances surrounding these allegations, we note that the entity
concerned here is a corporation. A corporation can act and acquire knowledge only through its agents. 
See Hirsch v. Texas Lawyers' Ins. Exchange, 808 S.W.2d 561, 563 (Tex. App.--El Paso 1991, writ
denied). Knowledge held by corporate officers or directors may be imputed to the corporation itself. Id. 
Knowledge of an attorney may be imputed to the client. See American Centennial Ins. Co. v. Canal Ins.
Co., 810 S.W.2d 246, 256 (Tex. App.--Houston [1st Dist.] 1991), aff'd in part & rev'd in part on
other grounds, 843 S.W.2d 480 (Tex. 1992); Carter v. Converse, 550 S.W.2d 322, 329 (Tex. Civ.
App.--Tyler 1977, writ ref'd n.r.e.); Kemp v. Harrison, 431 S.W.2d 900, 904 (Tex. Civ.
App.--Houston [14th Dist.] 1968, writ ref'd n.r.e.). Knowledge of an agent may be imputed to the
principal. See Wellington Oil Co. v. Maffi, 150 S.W.2d 60, 63 (Tex. 1941); Williams v. Jennings, 755
S.W.2d 874, 882 (Tex. App.--Houston [14th Dist.] 1988, writ denied). While the Templetons were not
officers of the Corporation, they held such a broad power of attorney and control of the Corporation that
their knowledge should be imputed to it.

 As to the first fact allegedly not known by the Corporation, we conclude that SCW's
representation of the Corporation was not inherently undiscoverable by it. (5) The Templetons' power of
attorney was "full, general and universal" with a broad yet nonexclusive listing of powers. The power of
attorney specifically included the power to engage and dismiss counsel. Even if the Templetons violated
one of their agreements with Poth by hiring SCW, there is no allegation that the attorneys-in-fact did not
have the power to authorize representation by SCW. Acting with authority on behalf of the Corporation,
the Templetons hired SCW. The identity of the Corporation's properly hired attorney was not inherently
undiscoverable by the Corporation.

 Second, appellants contend the Corporation paid $400,000 to SCW. The Templetons
respond that they, not the Corporation, paid SCW. Even if appellants are correct, however, we conclude
the information was not inherently undiscoverable. As with the hiring of SCW, even if paying SCW's bill
violated a Poth-Templeton agreement, the Templetons had the authority as attorneys-in-fact to pay for legal
representation on behalf of the Corporation. Considering the circumstances and nature of this alleged
wrong and the ability of the Corporation to know if its authorized attorneys-in-fact had paid for its legal
representatives, we conclude that the billing and alleged payment were not inherently undiscoverable by
the Corporation.

 Finally, we are left with the question of whether SCW's failure to file a claim on the Crum
insurance policy was inherently undiscoverable by the Corporation. Contained in the summary judgment
evidence is an affidavit by John Martin, who was one of the Corporation's attorneys, but was not an SCW
attorney. Martin affirms that he was aware of the issue of coverage by the Crum policy, but determined
after his own investigation that there was no coverage provided under the policy. Nonetheless, he
submitted to Crum a request for coverage, which was denied. Furthermore, Ben Templeton states in
deposition testimony that he asked SCW attorneys to investigate whether the Crum policies would cover
the litigation expenses. Templeton states that he was told the issue had been investigated and that the policy
would not cover the litigation.

 The question at this point of our analysis is not whether this evidence conclusively disposes
of the issue of coverage, but whether it indicates that the issue of SCW's alleged failure to request coverage
was inherently undiscoverable by the Corporation. Certainly, an attorney's expertise and fiduciary position
combined with client ignorance could, depending on the circumstances, make an attorney's wrongs
inherently undiscoverable. See Willis, 760 S.W.2d at 646. In Willis, the court concluded that the
attorney's negligent handling of a divorce case warranted invocation of the discovery rule to protect an
individual client who as a practical matter could not discover the wrong absent the hiring of a second
attorney to monitor the work of the first. See id. In the present case, however, the client, a corporation,
had agents who were specifically aware of and involved in the issue in question. The statements by the
Corporation's attorney, Martin, and its attorney-in-fact, Ben Templeton, demonstrate sufficient awareness
of the issue of coverage that the mere fact of whether SCW filed a claim for coverage was not inherently
undiscoverable by the Corporation. The discovery rule is not needed here for the Corporation to have a
reasonable opportunity to learn whether SCW requested coverage by Crum.

 In sum, appellants point to no wrong or injury that was inherently undiscoverable by the
Corporation. Accordingly, the discovery rule does not apply, and the Corporation's claims against SCW
are barred by limitations. Because Poth's individual claims are barred by lack of privity and the
Corporation's claims are barred by limitations, we need not address the other complaints raised in
appellants' points of error. Points of error one and two are overruled.


CONCLUSION

 The district court did not err in granting summary judgment and overruling appellants'
motion for new trial. Having overruled appellants' two points of error, we affirm the district court's
judgment.



 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and Kidd

Affirmed

Filed: April 16, 1998

Publish
1. A voting trust is subject to the principles that regulate the administration of trusts. See 18A Am. Jur.
2d Corporations § 1125, at 930 (1985).
2. Appellants point to two cases in support of Poth's right to maintain a claim against SCW. See Zuniga
v. Groce, Locke & Hebdon, 878 S.W.2d 313 (Tex. App.--San Antonio 1994, writ ref'd); Stonewall
Surplus Lines Ins. Co. v. Drabeck, 835 S.W.2d 708 (Tex. App.--Corpus Christi 1992, writ denied). 
Both of these cases concern excess and primary insurance carriers and the application of equitable
subrogation. We conclude that these cases are inapplicable to the Voting Trust present here.
3. Appellants do argue that essential facts were concealed from Poth, but that only addresses why
Poth's individual claims (which we find barred by lack of privity) might survive limitations. Appellants'
argument does not point out concealment of essential facts from the Corporation on which we might base
a conclusion that its claims are not time-barred.
4. Because we have concluded that privity bars Poth's individual claims, we need not decide whether
the alleged wrongful act and injury were inherently undiscoverable by him individually.
5. Even if the Templetons had violated the Poth-Templeton agreements by hiring SCW, SCW itself
could not have violated the agreements because it was not a party to the agreement.



Crum policy, but determined
after his own investigation that there was no coverage provided under the policy. Nonetheless, he
submitted to Crum a request for coverage, which was denied. Furthermore, Ben Templeton states in
deposition testimony that he asked SCW attorneys to investigate whether the Crum policies would cover
the litigation expenses. Templeton states that he was told the issue had been investigated and that the policy
would not cover the litigation.

 The question at this point of our analysis is not whether this evidence conclusively disposes
of the issue of coverage, but whether it indicates that the issue of SCW's alleged failure to request coverage
was inherently undiscoverable by the Corporation. Certainly, an attorney's expertise and fiduciary position
combined with client ignorance could, depending on the circumstances, make an attorney's wrongs
inherently undiscoverable. See Willis, 760 S.W.2d at 646. In Willis, the court concluded that the
attorney's negligent handling of a divorce case warranted invocation of the discovery rule to protect an
individual client who as a practical matter could not discover the wrong absent the hiring of a second
attorney to monitor the work of the first. See id. In the present case, however, the client, a corporation,
had agents who were specifically aware of and involved in the issue in question. The statements by the
Corporation's attorney, Martin, and its attorney-in-fact, Ben Templeton, demonstrate sufficient awareness
of the issue of coverage that the mere fact of whether SCW filed a claim for coverage was not inherently
undiscoverable by the Corporation. The discovery rule is not needed here for the Corporation to have a
reasonable opportunity to learn whether SCW requested coverage by Crum.

 In sum, appellants point to no wrong or injury that was inherently undiscoverable by the
Corporation. Accordingly, the discovery rule does not apply, and the Corporation's claims against SCW
are barred by limitations. Because Poth's individual claims are barred by lack of privity and the
Corporation's claims are barred by limitations, we need not address the other complaints raised in
appellants' points of error. Points of error one and two are overruled.


CONCLUSION

 The district court did not err in granting summary judgment and overruling appellants'
motion for new trial. Having overruled appellants' two points of error, we affirm the district court's
judgment.



 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and Kidd

Affirmed

Filed: Apr